STUTZMAN *v.* STATE OF INDIANA.

[No. 30,950. Filed April 2, 1968. Rehearing denied May 29, 1968.]

*J. Chester Allen, Allen & Allen,* of South Bend, for appellant.

*John J. Dillon,* Attorney General, *Ronald S. Timmons* and *Dennis J. Dewey,* Deputies Attorney General, for appellee.

JACKSON, J.—Appellant was charged on August 31, 1964, by a two-count affidavit with the crimes of (1) rape and (2) assault and battery with intent to commit a felony, to-wit:

rape. Motion to quash both counts of the affidavit was filed. Motion as to count one was overruled, and sustained as to count two. Appellant entered plea of not guilty, was tried to the court without a jury, and found guilty as charged in Count One. From such conviction appellant appeals.

The affidavit, omitting formal parts, reads as follows, to-wit:

"Jack Slaybaugh, being duly sworn upon his oath, deposes and says that on or about the 7th day of August, 1964 at the County of Wabash, and State of Indiana, one Leroy Jr. Stutzman.

1. did then and there unlawfully, feloniously and forcibly make an assault in and upon one Dorothy Diana Kinnard, a female, and did then and there, forcibly and against her will, unlawfully and feloniously ravish and carnally know her, the said Dorothy Diana Kinnard, AND

2. Jack Slaybaugh, being duly sworn upon his oath deposes and says that on or about the 7th day of August, 1964, at the County of Wabash and State of Indiana, one Leroy Jr. Stutzman did then and there unlawfully and feloniously, and in a rude and angry and insolent manner, strike one Dorothy Diana Kinnard, with the felonious intent then and there to forcibly and against her will, to unlawfully and feloniously ravish and carnally know her, the said Dorothy Diana Kinnard,

contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

On September 14, 1964, appellant, by counsel, filed Motion to Quash Affidavit, which motion omitting formal parts reads as follows:

"I

Comes now the defendant and moves the Court to quash count one of the affidavit herein for the following reasons:

(1) The facts stated in the affidavit do not constitute a public offense.

(2) The affidavit does not state the offense with sufficient certainty.

## II

Comes now the defendant and moves the Court to quash count two of the affidavit herein for the following reasons:

(1) The facts stated in the affidavit do not constitute a public offense.

(2) The affidavit does not state the offense with sufficient certainty."

Thereafter, on October 28, 1964, argument on the motion to quash was heard. The motion to quash was overruled as to count (1) of the affidavit charging Rape. Motion to quash was sustained as to count (2) of the affidavit charging Assault and Battery with Intent to Commit a Felony, to-wit: Rape.

Thereafter, on November 20, 1964, appellant, by counsel, waived arraignment, and pleaded not guilty to the affidavit.

On the 17th day of June, 1965, the parties appeared in person and by counsel, and the cause was submitted to the court for trial without the intervention of the jury on the charge contained in the affidavit of Rape. The State of Indiana presented its evidence and rested. The matter was continued to June 19, 1965.

On the 19th day of June, 1965, the parties in person and by counsel were present and the cause was resumed. The appellant presented evidence and rested. The State of Indiana presented rebuttal evidence and rested. The cause was continued to June 25, 1965.

On July 7, 1965, the parties in person and by counsel appeared in open court, and final argument of counsel was heard. Thereupon the court having heard the evidence and final argument of counsel found the appellant guilty as charged in the affidavit of Rape, and that he was 29 years of age. Presentence investigation was ordered. Bond pending sentencing was set at $10,000.00.

Thereafter, on August 6, 1965, appellant filed his Motion for a New Trial. Such motion, in pertinent parts, reads as follows:

"Comes now the defendant in the above entitled cause, and moves the Court for a new trial thereof upon the following grounds, and for the following reasons:

(1) Irregularity in the proceedings of the Court by which defendant was prevented from having a fair trial, in this, to wit:

> a. The Court erred in overruling the defendant's motion to quash the affidavit herein.

. . . .

(5) Error of law occurring at the trial in this, that the Court permitted the witness Larry Lee Walsh to answer the following questions put to him as a witness by the prosecuting attorney over the objections of the defendant upon cross examination which questions, objections, rulings of the Court and answers are as follows:

Q. To refresh your recollection, Mr. Walsh, didn't you have a conversation with Trooper Slaybaugh here on September 10, 1964 in reference to this?

A. I talked to him at one time.

Q. Didn't he at that time take a statement as to your testimony as far as what occurred that night?

A. We talked about it.

Q. And you told Mr. Slaybaugh—

MR. ALLEN: (interposing): Now, if the Court please, we will object to all this conversation unless it is shown that this defendant was present.

THE COURT: Objection overruled. This is to impeach his testimony now as to a statement made before.

Q. Now, Mr. Walsh, what was your object in going down to see Candice James on the week following, on August 20?

MR. ALLEN: Now, if the Court please, we will object to that for the reason that it is too remote from the date of this occurrence.

THE COURT: Objection overruled. This is cross examination.

Q. What did you tell her that the defendant had told you to say?

MR. ALLEN: Now, if the Court please, I will object to this conversation, which is not admissible because this defendant was not present and wouldn't be bound

by any conversation between this man and Candice James on August 20.

THE COURT: I assume that this is purely for the purpose of impeaching this witness' testimony.

MR. BOSTWICK: Yes, Your Honor.

THE COURT: Objection overruled. You may answer.

MR. ALLEN: Will the reporter repeat the question, please.

(Question read by reporter)

MR. ALLEN: Now, if the Court please, we will object to the form of that question because it is based on the assumption that this defendant told him to tell Miss Candice something.

MR. BOSTWICK: This is for the purpose of impeaching this witness, Your Honor.

THE COURT: This will be admitted only for the purpose of impeachment. It will not be admitted for the truth of the statement as to what the defendant said to him. It will only be admitted for the purpose of impeachment.

(6) Error of law occurring at the trial, in this, that the Court permitted the witness Jack Slaybaugh to answer the following questions put to him as a witness by the prosecuting attorney over the objections of this defendant upon direct examination which questions, objections, rulings of the Court and answers are as follows:

Q. I will hand you what is marked State's Exhibit 9 and ask you to identify what that is, Officer?

A. This is a typed statement, typed by me, taken from Larry Walsh.

Q. And in that statement did you ask Mr. Walsh—

MR. ALLEN: (interposing) Now, if the Court please, I will object to his testifying from this statement unless it can be shown that Larry Walsh signed this statement. Is that the import?

MR. BOSTWICK: I don't think it has to be shown that he signed it, Your Honor.

THE COURT: The statement itself is not being offered in evidence, is it?

MR. BOSTWICK: No.

THE COURT: You are questioning him about what Larry Walsh said at that time, is that correct?

MR. BOSTWICK: Yes, sir.

THE COURT: He can testify as to what he said and if he needs to refer to the statement to refresh his memory, he may do so. Of course it will be remembered that anything in this statement will be only a matter of impeachment of Larry Walsh and not a matter to be considered in the main case.

Objection overruled.

Q. Did you question Larry Walsh concerning whether or not he had gone to speak to Candice James after August 7, 1964?

A. It was not brought out so much by me questioning. This was just part of the story that he told me.

Q. And what did he tell you in reference to that, Officer?

A. In reference to going down there?

Q. Yes.

A. That he had gone down to find out what was going on.

Q. Did he tell you whether he had discussed this with the defendant or not?

A. Yes, he did.

Q. Can you recall his approximate words?

A. He told me that Junior had asked him whether he thought the Kinnards would be willing to settle it for money out of court and he asked him if he could feel them out on the subject.

Q. Did you ask Mr. Walsh to sign that statement?

A. I asked him if he would like to.

Q. Did he sign it?

A. He did not.

Q. What did he say?

A. He said that everything he had told me was true, everything in the statement was true, but that he would rather not sign it because he and Junior were friends and he did not want to appear to be too anxious to help hang him. He further stated that he would testify to the same thing in court.

(7) That the finding of the Court is contrary to law.

(8) That the finding of the Court is not sustained by sufficient evidence.

WHEREFORE, the defendant prays the Court for a new trial of said cause."

On December 17, 1965, appellant's Motion for New Trial was submitted to the court without argument. Argument as to probation was heard. Both matters were taken under advisement and set for determination January 3, 1966.

On the 6th day of January, 1966, the Motion for New Trial was overruled. The pre-sentence investigation was shown to have been filed theretofore, on or about August 6, 1965. The court sentenced the appellant to the Indiana State Reformatory for a period of not less than two (2) years, nor more than twenty-one (21) years. On January 11, 1966, the court corrected the sentence by sentencing the appellant to the Indiana State Prison for a period of not less than two (2) years nor more than twenty-one (21) years.

Appellant's Assignment of Errors is:

"1. The court erred in overruling appellant's motion for a new trial."

Appellant first asserts that the trial court erred in overruling his motion to quash the affidavit. He argues that count one of the affidavit is duplicitous and bad because it contains allegations of assault and rape which are two distinct crimes carrying two different penalties. Appellant contends that the affidavit charged him with assault by the words "did then and there unlawfully, feloniously and forcibly make an assault in and upon one Dorothy Diana Kinnard, . . ." In support of this contention he cites § 10-402 Burns' which provides in part:

"Whoever, having the present ability to do so, attempts to commit a violent injury upon the person of another, is guilty of an assault, . . ."

There is no averment in the affidavit that the appellant had the present ability to commit the assault, which is an essential element of the charge of assault.

"The affidavit may contain averments not absolutely necessary, but it cannot be held bad for duplicity because

it contains a part only of the averments necessary to charge an offense under another and different statute." *Herron* v. *State* (1896), 17 Ind. App. 161, 164, 46 N. E. 540.

In a recent case this Court stated:

"It is claimed that there was error in overruling appellants' amended motion to quash. There it was alleged that the facts stated in counts one and two of the affidavit did not constitute a public offense, nor that they stated the offense with sufficient certainty. In argument, appellants contend duplicity in that two separate and distinct offenses, being assault and rape, are charged in count two. This court has upheld similar charges of rape. . . .
The court did not err in overruling the amended motion to quash." *Martin* v. *State* (1964), 246 Ind. 43, 48, 49, 201 N. E. 2d 42, 45.

Appellant next asserts that the trial court erred in permitting Larry Walsh and Jack Slaybaugh to answer certain questions put to them by the prosecutor over the objections of the appellant. Appellant's argument is defective. The trial court made it very clear that the testimony was admitted only for the impeachment of Larry Walsh. It is well established that the credibility of a witness may be impeached by showing prior inconsistent statements. *Pollard* v. *State* (1950), 229 Ind. 62, 94 N. E. 2d 912; *Clevenger* v. *State* (1924), 195 Ind. 45, 144 N. E. 524.

Appellant finally urges that the finding of the trial court is contrary to law because it is not sustained by sufficient evidence. This Court has many times held that on appeal from a criminal conviction the State is entitled to the most favorable version of the evidence together with all reasonable inferences which may be drawn therefrom. Also, a finding or verdict below will not be disturbed for insufficiency of evidence unless there is a total absence of some evidence on an essential element of the crime charged. *Greenwalt* v. *State* (1965), 246 Ind. 608, 209 N. E. 2d 254, 210 N. E. 2d 373; *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866.

The evidence most favorable to the State shows that on the evening of August 7, 1964, Dorothy Diana Kinnard went to the County Fair at Warsaw, Indiana, with two girl friends, Candy James and Beverly Gunn. The girls left the fair about 10:00 or 10:30. They followed Larry Walsh to his home in rural Wabash County. The appellant and Jim Lotz arrived at the Walsh home shortly after the girls got there. The girls were served drinks mixed with vodka. After the drinks were finished the boys started "pairing off" with the girls. Diana and appellant went into a bedroom and closed the door. They sat on the edge of the bed and kissed. Diana did not resist appellant's kisses until he pushed her down on the bed and tried to get his hands under her blouse. She then got up and went into the kitchen for a glass of water. The appellant followed her into the kitchen. He walked to a door and jumped several feet to the ground outside. There were no steps from the door to the ground. He asked Diana to go outside with him, but she refused. He then grabbed her ankle and pulled her out the door. She fell and scraped her leg. Appellant then took her to the front yard where he sat down on the ground next to a tree. Diana started back toward the house, and appellant grabbed her and pulled her down on the ground. He kissed her and tried to pull off her clothes. Diana threatened to scream and did scream when appellant persisted. Appellant told her to shut up or he would hit her. When she continued to scream, he hit her in the left jaw with his fist. When appellant hit Diana, she was lying on the ground and his knees were across her stomach. Appellant ripped the zipper on her pedal pushers and tore the catch off her bra. Diana was dazed for a few seconds by appellant's blow. When she woke up appellant was on top of her. He had her pants off and was performing intercourse. Diana kept screaming. Finally appellant stopped and rolled over on the grass. Diana got her clothes and put them on while she was walking back to the house. She tried to get into the house but the door latch was too high. She pounded on the door, and Beverly Gunn and Jim Lotz let her in. She fell in and

passed out. On August 10, 1964, Diana was examined by Dr. Bray Shanks who testified he observed bruises and discoloration on her left jaw and under her chin. Her left wrist and right breast were bruised and swollen. He also observed red and irritated areas in the vicinity of the vagina.

From a review of the evidence we find that it was sufficient to sustain the finding and judgment of the trial court. The finding and judgment of the trial court was not contrary to law.

The judgment is affirmed.

Lewis, C. J., and Arterburn, Hunter and Mote, JJ., concur.

NOTE.—Reported in 235 N. E. 2d 186.