**Sandra K. BARNES and Robert E. Barnes**

v.

**UNITED STATES of America, Appellant.**

**No. 82–5095.**

United States Court of Appeals, Third Circuit.

Argued June 14, 1982.

Decided June 28, 1982.

Brendan V. Sullivan, Jr., F. Whitten Peters (argued), Williams & Connolly, Washington, D. C., James L. Weisman, Weisman, Pass & Swartz, Pittsburgh, Pa., for appellees.

J. Alan Johnson, U. S. Atty., Pittsburgh, Pa., J. Paul McGrath, Asst. Atty. Gen., Jeffrey Axelrad, Sandra L. Jenkins, Laura D. Millman (argued), Attys., Civ. Div., Dept. of Justice, Washington, D. C., for appellant.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The government's appeal from a judgment in a claim under the Swine Flu Act[1] tracks a narrow compass. It complains that the district court's award of damages for lost future earnings was excessive and punitive because it did not account for future income taxes and was not reduced to present worth. We conclude that the district court's fact finding was not clearly erroneous and that the court did not err in the selection, interpretation, or application of legal precepts. Accordingly, we affirm.[2]

## I.

At the end of November 1976, Sandra Barnes, a young mother of a baby daughter, returned from maternity leave to her position as a therapeutic recreation counselor. Like millions of Americans, she received a swine flu shot at her place of employment; unlike most Americans, Sandra Barnes contracted Guillain-Barre Syndrome, and walked for the last time in her life into a hospital emergency room on Christmas Eve, 1976. Today she is a paraplegic, confined to a wheel chair except for periods of exercise.

In late 1978, Mrs. Barnes and her husband brought this action against the United States under the Swine Flu Act. Congress, by abrogating all causes of action against participating vaccine manufacturers and health care providers and substituting an exclusive right of action against the United States, intended this legislation to encourage participation in the federal swine flu immunization program. *See Titchnell v. United States*, 681 F.2d 165, 168 & n.2 (3d Cir. 1982); 42 U.S.C. §§ 247b(k)(2)–(3). The right of action created by the Act is governed by the procedural requirements of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, which, in turn, adopts with some exceptions the law of the state in which the cause of action arose. *Id.* at §§ 1346(b), 2674.

1. Pub.L.No. 94–380, 90 Stat. 1113. (*Formerly codified at* 42 U.S.C. §§ 247b(j)–(*l*) (1976)). The statutory provisions comprising the National Swine Flu Program of 1976 have been deleted from the United States Code. For convenience, however, we will cite to the 1976 edition of the code.

2. The trial court held that the plaintiff was entitled to damages as follows:

| | |
|---|---|
| Medical expenses | $ 15,255.13 |
| Home improvements to June 15, 1981 | 18,875.36 |
| Miscellaneous expenses | 3,533.50 |
| Bureau of Vocational Rehabilitation expenses | 2,842.44 |
| Child and homemaker costs | 3,450.00 |
| House alterations | $ 77,731.50 |
| Lost wages to June 15, 1981 | 75,708.74 |
| Future lost wages | 665,716.00 |
| Future cost of paraplegic equipment | 48,000.00 |
| Pain and suffering | 666,000.00 |
| **Total** | **$1,577,112.67** |

*Barnes v. United States*, 516 F.Supp. 1376, 1391 (W.D.Pa.1981). Because the government contests only the award of future lost wages, this court granted appellee's motion for partial summary affirmance with respect to the other elements of damages. *Barnes v. United States*, 678 F.2d 10, (3d Cir. 1982).

The United States stipulated to liability but contested the amount of damages. Before the trial began, the Pennsylvania Supreme Court decided *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980), which substantially changed the measure of damages for loss of future earnings under Pennsylvania law. Reversing prior Pennsylvania decisions, the court held that both inflation and a plaintiff's productivity increases may be considered in computing lost future earnings. To account for inflation, it adopted the "total offset" method: the loss of future earnings equals present wages, adjusted for productivity increases, multiplied by estimated work years; this product is not reduced to present value because future interest rates and future inflation are conclusively presumed to be equal and offsetting.

The district court adopted the calculation for lost future wages presented by plaintiff's expert witness, Dr. Reuben Slesinger, professor of economics at the University of Pittsburgh. Dr. Slesinger first calculated the salary Sandra Barnes would have received under her contract, which would have expired on June 30, 1983. He calculated lost wages for subsequent years by multiplying the annual wage under her contract for the year 1983, $22,221, by 28, the number of years government statistics indicated she would have remained in the work force. The sum of these two figures is $665,716.

The district court found this approach both "conservative" and "realistic":

> While the amount is great, we believe it is a conservative approach to the problem since Dr. Slesinger's computation does not speculate that Mrs. Barnes would have been promoted to a higher paying position one or more times; neither does it contemplate salary raises encompassed in future contracts. Both of these possibilities are realistic. Mrs. Barnes had been a good worker and had been promoted during her first four years on the job. As to future salary raises, in these days, salaries nearly always go up,

and we believe that this finding of future lost wages of $665,716 is realistic.

516 F.Supp. at 1388.

The district court held that the total offset method of calculating lost earnings controlled in Swine Flu Act cases arising in Pennsylvania, and that the computations made by Dr. Slesinger were consistent with this approach. The government proffered no expert testimony or other evidence on computation of lost wages, and it made no effort at trial to quantify the effect, if any, that consideration of federal income taxes might have on Dr. Slesinger's estimates of future income. Its only evidence on taxes was Sandra Barnes' 1976 "W–2" form, which it offered not to show taxes incurred by Mrs. Barnes, but to show actual 1976 wages because of an alleged "discrepancy" in Dr. Slesinger's testimony. The district court made no finding of fact or conclusion of law on the income tax issue raised by the government in this appeal.

The government argues that the award grossly overcompensated the plaintiff and was thus punitive in effect; that the court erred by failing to adjust the future earnings award for income taxes; and that the court erred in failing to discount the award to present value. We agree with the government's choice of the controlling legal precept regarding punitive damages in Federal Tort Claims Act cases, 28 U.S.C. § 2674, but we disagree with its suggested application of the precept to the facts found by the district court.

## II.

The district court was bound to apply Pennsylvania damage law to this case because in fashioning the FTCA Congress defined the liability of the United States in terms of "a private person" in the place where the tort occurred. 28 U.S.C. § 1346(b). The government's liability is qualified, however, by an express bar against punitive damages:

> The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable . . . for punitive damages.

28 U.S.C. § 2674. *See generally Massachusetts Bonding & Insurance Co. v. United States*, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956); *Smith v. United States*, 587 F.2d 1013, 1016 (3d Cir. 1978).

Regardless of the label a state attaches to damage awards, the standard under the Tort Claims Act is compensatory. *See Massachusetts Bonding & Insurance Co. v. United States*, 352 U.S. at 132. The objective of compensation in tort law is "to place the plaintiff in the same economic position as would have been his if the injury had not occurred." *Russell v. City of Wildwood*, 428 F.2d 1176, 1181 (3d Cir. 1970). "The purpose of personal injury compensation is neither to reward the plaintiff, nor to punish the defendant, but to replace plaintiff's losses." *Domeracki v. Humble Oil & Refining Company*, 443 F.2d 1245, 1250 (3d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). *Cf. Smith v. United States*, 587 F.2d 1013 (3d Cir. 1978) (permitting application of the Pennsylvania collateral source rule in FTCA actions).

### III.

We are thus squarely confronted with the government's dual contentions that the court's failure to reduce the award to account for income taxes and its application of Pennsylvania's total offset method of calculating future earnings ran afoul of the foregoing precepts. We consider and reject each contention in turn.

### A.

Under Pennsylvania law, a tort plaintiff must only prove damages with "reasonable certainty." *Kaczkowski*, 491 Pa. at 567, 421 A.2d at 1030 (citing cases); *Frankel v. United States*, 321 F.Supp. 1331 (E.D.Pa.1970) (applying Pennsylvania rule in FTCA cases), *aff'd sub nom. Frankel v. Heym*, 466 F.2d 1226 (3d Cir. 1972). *See also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). The party seeking to reduce the amount of damages shown to a reasonable certainty has

the burden "of producing evidence to show the proper reduction." *Funston v. United States*, 513 F.Supp. 1000, 1010 (M.D.Pa. 1981); *Roadway Express, Inc. v. Highway Truck Drivers & Helpers, Local 107*, 299 F.Supp. 1058, 1063 (E.D.Pa.1969). *See also Overton v. United States*, 619 F.2d 1299, 1309 n.16 (8th Cir. 1980) (the United States has burden of proving reduction of damages in FTCA actions). The reason for the rule is quite plainly that the risk of uncertainty should be placed on the wrongdoer, rather than the innocent party. *Story Parchment*, 282 U.S. at 563, 51 S.Ct. at 250.

Assuming *arguendo* that an FTCA award for loss of future earnings must be reduced by projected taxes, *cf. Norfolk & Western R. Co. v. Liepelt*, 444 U.S. 490, 495, 100 S.Ct. 755, 758, 62 L.Ed.2d 689 (1980) (award for lost earnings must be reduced by income taxes in FELA action), we conclude that the government failed to meet its burden. The only evidence the government introduced having any bearing on Sandra Barnes' taxes was a W–2 form; and as we have noted, it was introduced not for the purpose of reducing the award, but to discredit the testimony on Mrs. Barnes' projected income. In another Swine Flu Act case, *Funston v. United States*, Judge Malcolm Muir expressed the appropriate response to the argument presented by the government here:

> The only evidence relating to Mr. Funston's past tax liabilities was a plaintiff's exhibit that showed the amount of tax withheld from his salary. No evidence was presented by the Government as to Mr. Funston's gross income, his adjusted gross income or his taxable income. In the absence of any evidence showing those figures, the Court is not in a position to resort to 26 U.S.C. § 1 [income tax tables] to determine the appropriate tax.
>
> ... The Court, therefore, concludes that even if a reduction in Plaintiff's award because it is free of federal income tax were appropriate the Government has failed to produce sufficient evidence upon which to base a calculation as to the appropriate reduction.

513 F.Supp. at 1010. The government utterly failed to meet its burden to show the amount by which the award to Mrs. Barnes should have been reduced to account for taxes. We cannot, therefore, conclude that the district court erred by failing to reduce the award.

## B.

■ The second prong of the government's argument is that failure to reduce an award for lost future earnings to present worth is tantamount to awarding punitive damages disguised as compensation. We reject this proposition because the total offset rule announced in *Kaczkowski* does include reduction to present worth. Indeed, that is its theoretical underpinning. As we recently explained in approving use of the rule in a Longshoremen's and Harbor Workers' Compensation Act case:

> We are impressed by the "total offset method" because it both accommodates the reality of inflation and bids fealty to the concept of reducing future earnings to present worth. It makes a judgment—evaluative to be sure, but no better or no worse than the varying prognostications of expert witnesses—that the rate of future inflation will be equivalent to future interest rates. From a pragmatic viewpoint, lost future earnings need not be discounted to present value, although the formula calls for a theoretical reduction to present worth, because the inflation and discount rates are legally presumed to be equal and cancel one another.

> ... The total offset formula embodies the continued requirement of reduction to present worth ... and it avoids considerations that would tend to introduce an illicit speculative element into the computations. Indeed, by eliminating the discount factor from the jury's or the court's calculations, the total offset method will tend to eliminate the necessity for speculation, to introduce greater certainty into the parties' own calculations, and thereby

perhaps to facilitate settlement of personal injury claims without the necessity of judicial intervention.

*Pfeifer v. Jones & Laughlin Steel,* 678 F.2d 453, 461, (3d Cir.) —— U.S. ——, 103 S.Ct. 50, 74 L.Ed.2d 57 (1982) (citations omitted). We recognize that the total offset method may not conform precisely to economic reality, but we recognize also that the government's proposal carries with it a "delusion of exactness." *Traux v. Corrigan,* 257 U.S. 312, 342, 42 S.Ct. 124, 133, 66 L.Ed. 254 (1921) (Holmes, J., dissenting). Thus, although the government may be "logically correct" in contending that a presumption of total offset may result in excess compensation,

> we must remember that the ultimate total damage figure awarded is the sum of a series of predictions, none of which involves mathematical certainty, and that it is the reasonableness of the ultimate figure that is really in issue in such a case as this.

*United States v. Furumizo,* 381 F.2d 965, 970 (9th Cir. 1967).

We are also mindful that our duty in this case is to apply the law of Pennsylvania to whatever extent that law can be viewed to be reasonably consistent with the FCTA. It was Congress's objective in § 2674 to afford state tort laws considerable prominence in the resolution of suits against the government as tortfeasor, and we are obligated not to overlook that policy judgment in reconciling the terms of § 2674 that are at issue in this case. The Pennsylvania courts have decided that the goal of fair compensation for future lost wages is best served by a rule which favors predictable simplicity over mathematical exactitude. We cannot say that such a policy is in *any* sense punitive. We are persuaded that the total offset method is a reasonable method of predicting lost earnings; to the extent that it may overcompensate the injured party should inflation and interest rates cease to co-vary significantly, we cannot conclude that the rule exceeds the limits of 28 U.S.C. § 2674.[3]

**3.** To the extent that *Hollinger v. United States,* 651 F.2d 636 (9th Cir. 1981), holds otherwise,

we find its analysis unpersuasive.

## IV.

We have carefully considered all the contentions presented by the appellant,[4] including the computation argument presented with mathematical exactitude in the government's brief, 10–11.

The "law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness." ... All that the law requires is that "(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." ... "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation."

*Kaczkowski v. Bolubasz*, 491 Pa. at 567, 421 A.2d at 1030 (citations omitted). We are satisfied that the district court did not err in calculating future lost earnings.

The judgment of the district court will be affirmed.

---

**4.** We reject also the government's contention emphasized at oral argument that although the *Kaczkowski* rule applies to private defendants in Pennsylvania cases, it may not be applied in Swine Flu Act cases brought against the United States. A Swine Flu Act claim has its origins in conduct of private parties, the manufacturers of the vaccine. The underlying action is against the private parties but the United States acts as a "substitute defendant." *See*

*Wallace v. United States*, 669 F.2d 947, 954 (4th Cir. 1982). *See also id.* at 950–51 (legislative history). Because the injury suffered by the plaintiff has its origins in conduct that would give rise to an ordinary civil action against private parties, there are no persuasive reasons for not applying state rules of damage. *See also Hunt v. United States*, 636 F.2d 580 (D.C.Cir.1980).