Kenneth M. EVERSOLE,
Plaintiff-Appellant,

v.

CONSOLIDATED RAIL CORPORATION, a/k/a Conrail,
Defendant-Appellee.

No. 73A01-8903-CV-109.

Court of Appeals of Indiana,
First District.

March 19, 1990.
Rehearing Denied April 30, 1990.

John C. Green, Hume, Smith, Geddes & Green, Indianapolis, and Charles T. Bate, Bate, Harrold & Meltzer, Shelbyville, for plaintiff-appellant.

Nicholas C. Nizamoff and Cynthia L. Wodock, White & Raub, Indianapolis, for defendant-appellee.

## STATEMENT OF THE CASE

BAKER, Judge.

Plaintiff-appellant, Kenneth M. Eversole (Eversole), appeals the alleged insufficiency of a damage award entered in his favor on a claim against his employer, defendant-appellee, Consolidated Rail Corporation, a/k/a Conrail (Conrail).

We affirm.

## STATEMENT OF THE FACTS

On September 23, 1985, Eversole was injured while performing his duties as a railroad car inspector with Conrail. While attempting to connect an air brake hose between two cars, Eversole stepped into the gauge (the space between the two rails of each track). As he did so, he stepped on a discarded brake shoe which caused him to fall and severely injure his back.

The customary practice at the Conrail railroad yard was to distribute new brake shoes on the ground outside the gauge and to discard warn brake shoes inside the gauge. Eversole knew of the practice and participated in both distributing and discarding brake shoes.

Prior to the accident, Conrail promulgated a safety rule requiring its employees to remove tripping hazards from their path. Following the accident, a disciplinary hearing was held to determine whether Eversole violated Conrail's safety rule. When asked at the hearing why he did not remove the brake shoe from his path, Eversole responded, "I did not see it necessary. I tried to avoid it." *Record* at 1332.

Eversole filed a claim against Conrail pursuant to the Federal Employers' Liability Act (FELA),[1] alleging negligence on the part of Conrail. Eversole testified at the jury trial that the brake shoe was located outside the gauge and that he did not see it in time to avoid stepping on it. The jury determined Eversole's gross damages to be $140,000. The jury also found Eversole was 86% contributorily negligent and reduced his damages to $19,600. Following the trial court's entry of judgment on the jury verdict, Conrail filed a Motion of Setoff and Entry of Satisfaction of Judgment. Conrail alleged in its motion that it was entitled to a setoff against the judgment for sickness and insurance benefits previously received by Eversole. Conrail's motion was granted and the trial court ordered a $17,466.93 setoff against the judgment. Eversole filed a Motion to Tax Costs totaling $2,434.80 of which the trial court awarded $46.00. Eversole appeals the reduction in the damages award, the granting of Conrail's setoff motion, and the amount awarded in costs.

## ISSUES

Eversole raises nine issues for our review:

I. Whether the trial court erred in giving Final Instruction No. 8 regarding Eversole's burden of proof.

II. Whether the trial court erred in giving Final Instruction No. 21 regarding Conrail's and Eversole's duty with respect to safety at the workplace.

III. Whether the trial court erred in giving Final Instruction No. 22 regarding Eversole's choice of ways in performing his activities.

IV. Whether the trial court erred in giving Final Instruction Nos. 26 and 28 regarding the calculation of lost wages based on net earnings.

V. Whether the trial court erred in giving Final Instruction No. 27 regarding computation of future damages on the basis of present value.

VI. Whether the trial court properly admitted interest and actuarial tables into evidence for purposes of present value calculations.

VII. Whether Eversole's unsworn statements made at the disciplinary hearing were admissible as impeachment evidence.

VIII. Whether the trial court erred in granting Conrail's motion for setoff.

IX. Whether the trial court erred in awarding only $46 of the $2,434.80 requested by Eversole in costs.

---

1. 45 U.S.C.A. § 51 et seq. (West Supp.1986).

## DISCUSSION AND DECISION

 As an initial matter, we note that Eversole's challenges to the jury instructions given by the trial court involve substantive issues arising from the application of FELA. Although FELA actions are adjudicated in state courts and follow state procedural rules, the proceedings are governed by federal substantive law. *St. Louis Southerwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303. Whether it was error to give the instructions, as well as whether evidence offered in connection with the instructions was properly admitted, is a question of federal law. *Norfolk & W. Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689. In determining whether the jury was adequately instructed, we consider the trial court's jury instructions as a whole. *Caillouette v. Baltimore & Ohio Chicago Terminal R.R. Co.* (7th Cir.1983), 705 F.2d 243.

### I.

 Eversole contends the trial court erred in giving Final Instruction No. 8 which provides as follows:

Before you would be warranted in returning a verdict for plaintiff you are instructed that the plaintiff must prove by a preponderance of the evidence that:

1. The defendant railroad was negligent; and

2. The injury and damages for which the plaintiff seeks recovery in this action resulted from such negligence.

If you determine that the plaintiff has failed in his burden of proof on any one of the two elements, your verdict should be for the defendant railroad, Consolidated Rail Corporation.

Defendant contends that:

1. Defendant had a reasonable procedure for the placement of brake shoes in the Departure Yard;

2. The brake shoe in question was located in a reasonable place in light of all of the circumstances;

3. Plaintiff's injuries were not caused by any debris unreasonably present in the Departure Yard;

4. Defendant was not negligent in any way which caused or contributed to plaintiff's injuries;

5. Plaintiff failed to keep a lookout for the brake shoe which was plainly visible;

6. After seeing the brake shoe, plaintiff failed to exercise reasonable care when he stepped on it.

The burden of proving the elements of the plaintiff's case is always with the plaintiff, and never shifts to the defendant.

*Record* at 917. Eversole argues that while the first part of the instruction correctly states the law, the insertion of Conrail's contentions in the middle of the instruction was error. Eversole claims the inclusion of Conrail's contentions in the instruction was confusing and misleading to the jury because it appears as if the contentions were a part of Eversole's burden of proof. Eversole also claims that because the contentions contain elements of Conrail's affirmative defense of contributory negligence, the jury believed Eversole had the burden of disproving Conrail's claim of contributory negligence.

When looking at Instruction No. 8 together with the court's other instructions on the burden of proof, we find the jury was not misled or confused. Final Instruction No. 9 set forth Eversole's burden of proof on the elements of negligence and did not list Conrail's contentions. Final Instruction No. 7 listed Eversole's contentions regarding his claim. Furthermore, Final Instruction No. 12 explained the elements of contributory negligence and the nature of the claim as an affirmative defense. Instruction No. 12 explicitly stated in pertinent part that:

The defendant has the burden of proving, by a preponderance of the evidence, that the plaintiff was contributorily negligent. If the proof fails to establish any essential element of such defense by a preponderance of the evidence, or if the evidence on any essential element thereof is equally balanced, then such defense would fail.

*Record* at 921. We find that when looking at all of the instructions given on both

parties' burden of proof, the jury was adequately instructed.

## II.

■ Eversole next contends the trial court erred in giving the following Final Instruction No. 21:

> The defendant may not be charged with negligence in this case by failing to anticipate that the plaintiff would not take the ordinary and proper precautions to protect and safeguard his health and welfare. Railroad employees have a duty to use reasonable care in the workplace.

*Record* at 930. Eversole argues this instruction does not correctly state the law because it assumes away Conrail's non-delegable duty to provide its employees with a safe workplace.

In support of his argument, Eversole cites *Ackley v. Chicago and N.W. Transp. Co.* (8th Cir.1987), 820 F.2d 263. In *Ackley*, a railroad employee was injured while using a defective ladder provided by his employer. The eighth circuit found the trial court's reading of the following instruction was prejudicial error: "The Defendant has a right to assume that its employees will exercise reasonable care for their own safety and that they will not disobey safety rules and practices." *Id.* at 266. The court's concern was that if the railroad was allowed to assume its employees would not act negligently, then the scope of foreseeability required of the railroad would be significantly diminished.

*Ackley* is distinguishable from the present case. The court in *Ackley* found error in the instruction because of the danger it presented in suggesting that a safety rule violation would bar all recovery in a FELA action. In the present case, the trial court instructed the jury in Final Instruction No. 18 that, "violation of a safety rule will not ordinarily constitute negligence as a matter of law...." *Record* at 927. This instruction guarded against the concerns articulated by the eighth circuit in *Ackley*.

Further, Instruction No. 21 correctly states the law as articulated by the fifth circuit in *Atlantic Coast Line R.R. Co. v. Dixon* (5th Cir.1951), 189 F.2d 525, *cert.*

*denied* 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628. In *Dixon*, the fifth circuit noted the duty of every employee to exercise reasonable and ordinary care for his own safety. The court further noted: "Nor is it actionable negligence that an employer fails to anticipate lack of care on the part of an employee." *Id.* at 527. Instruction No. 21 tracked the language of this case and conforms to the purposes underlying FELA.

One of the underlying purposes of FELA is to prevent the defense of contributory negligence from barring the recovery of an injured employee while allowing employers to raise the defense to diminish the damages caused by the employee's own negligence. 45 U.S.C.A. § 53 (West Supp.1986); *Caillouette, supra.* Based on this principle, it is correct to state that the employer is not responsible for failing to anticipate the employee's own negligence. The trial court properly gave Instruction No. 21 to the jury.

## III.

■ The trial court gave the following Final Instruction No. 22:

> You are instructed that if the plaintiff had a choice of ways to perform the activity in which he was engaged at the time of the incident in question, one way involving danger and risk of injury to himself and another way that was safe or less dangerous, and he voluntarily chose the unsafe or more dangerous way, then you may find that the plaintiff was negligent, if the risk of injury was obvious and such as a man of ordinary prudence would have avoided.

*Record* at 931. Eversole argues this instruction was given in error because it impermissibly instructed the jury on assumption of the risk, a defense unavailable to employers in FELA actions. Further, Eversole argues there was insufficient evidence to instruct the jury on the choice of ways doctrine.

Eversole is correct in his assertion that the assumption of the risk doctrine plays no part in FELA actions. 45 U.S.C.A. § 54 (West Supp.1986). The instruction given by the court, however, did not address as-

sumption of the risk. Rather, it is an instruction on contributory negligence. Specifically, the jury was instructed that if they found Eversole acted in a certain manner, they could find he was negligent. In addition, the jury was articulately instructed in Final Instruction No. 23 that assumption of the risk was not an available defense in this case. That instruction quoted 45 U.S.C.A. § 54 which specifically sets forth that assumption of the risk is not a defense. The jury was further instructed that:

When a person knows of a danger, understands the risk involved and voluntarily exposes himself to such danger, that person is said to have "assumed the risk of injury." At the time of the occurrence in question, there were certain risks inherent with Plaintiff's assigned duties for Defendant. Merely because he exposed himself to the risks of his employment for Defendant cannot defeat his claim.

*Record* at 932. It is clear from this instruction that the jury was adequately advised that assumption of the risk could not defeat Eversole's claim.

■ Contrary to Eversole's assertion, the record contains sufficient evidence to warrant giving the choice of ways instruction.[2] Conflicting evidence was presented on whether Eversole saw the brake shoe and chose not to remove it as required by Conrail's safety rule or whether Eversole did not see the brake shoe until it was too late for him to avoid it. Instruction No. 22 placed the question before the jury by instructing them "that *if* the plaintiff had a choice of ways...." *Record* at 931 (emphasis added). We find no error in the giving of this instruction.

### IV.

Eversole next argues that the trial court erred in giving the jury Final Instructions No. 26 and 28 because such instructions advised the jury that any award for lost wages was to be calculated on the basis of net earnings. Eversole recognizes that in FELA actions, a jury instruction on the nontaxability of awards is proper. *Liepelt, supra.* Eversole, nonetheless, contends there was insufficient evidence to support giving the instruction.

■ Eversole bases his contention on the fact that the only evidence offered to show his net earnings was his W–2 forms offered by Conrail. Eversole cites *Barnes v. United States* (3rd Cir.1982), 685 F.2d 66, for the proposition that the introduction of an employee's W–2 form alone is insufficient to support a reduction in damages to account for income taxes. *Barnes*, however, involved a claim brought under the Swine Flu Act which is governed by the procedural requirements of the Federal Tort Claims Act. The Federal Tort Claims Act, in turn, adopts the law of the state where the cause of action arose. *Id.* Accordingly, *Barnes* was based on damages principles arising under Pennsylvania law. Such principles do not apply in the present case. Rather, the measure of damages in a FELA action is federal in nature. *Liepelt, supra.* Under federal law, damage awards in FELA actions must be reduced by applicable income taxes and the jury is required to be instructed accordingly. *Id.* The fact that Conrail offered only Eversole's W–2 form as evidence of net earnings does not change this requirement. Eversole was free to offer his own rebuttal evidence concerning allowable deductions or exemptions. His failure to do so was simply a matter of trial tactics and does not render the challenged instructions erroneous.

### V.

■ Eversole next contends the trial court erred in giving Final Instruction No. 27 which advised the jury that in computing any damages arising in the future, present value must be utilized. Eversole recognizes that the instruction is mandatory under federal law. *Monessen Southwestern Ry. Co. v. Morgan* (1988), 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349; *Dick-*

---

2. Federal courts have upheld the choice of ways rule articulated in Instruction No. 22. *See Jackson v. Illinois N. Ry.* (7th Cir.1955), 224 F.2d 76; *Wadiak v. Illinois Cent. R.R. Co.* (7th Cir.1953), 208 F.2d 925.

*erson, supra.* He argues, however, that the instruction was confusing and incomplete because it did not define terms such as "reasonable investor", "aggregate discount rate", or "reasonable rate of return." The challenged instruction provided that:

> In computing any damages arising in the future because of the loss of future net earnings, you must not simply multiply the damages by the length of time you have found they will continue, or by the number of years you have found that the plaintiff is likely to live, using which ever time period is shorter.
>
> Instead, you must determine their present cash value. Present cash value means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of earnings at the time in the future when the loss from the injury will be suffered, or the earnings would have been received.
>
> The method for computing present cash value is:
>
> First: Decide how long the losses proximately caused by the defendant for future net earnings will extend.
>
> Second: Choose a discount rate that equals the percentage a reasonable investor would receive on an investment of a lump sum of cash.
>
> Third: Using a present value, apply the appropriate discount rate corresponding to the length of time of future losses and your chosen reasonable rate of return.
>
> Fourth: Calculate the totals of all future net wages.
>
> Fifth: Multiply the total amount of future losses by the discount rate selected; this sum is the present value of all future losses of net earnings.

*Record* at 936.

Although Eversole argues the instruction was confusing to the jury, he did not submit his own instruction in an attempt to clarify the alleged confusion. Eversole's failure to request a more specific instruction, waives the issue on appeal. *Radia-*

*tion Dynamics, Inc. v. Goldmuntz* (2d Cir. 1972), 464 F.2d 876, 890; *United States v. Ballentine* (2d Cir.1969), 410 F.2d 375, 377, *cert. denied* 397 U.S. 928, 90 S.Ct. 935, 25 L.Ed.2d 107. The trial court properly instructed the jury on the issue of present value as required by federal law.

## VI.

■ Eversole next contends the trial court erred in admitting standard interest and annuity tables in conjunction with its instruction on present value. The United States Supreme Court has recently spoken on this issue in *Monessen, supra.* In stating that the present value calculation is to be made by the trier of fact, the court went on to explain:

> [T]he [trial] judge has an obligation to prevent the trial proceedings on the present value issue from becoming unnecessarily prolonged and the jury from becoming hopelessly mired in "difficult mathematical computation." It is therefore permissible for the judge to recommend to the jury one or more methods of calculating present value so long as the judge does not in effect pre-empt the jury's function. A trial judge's instructions to the jury with regard to discount methods—provided that they do not "subject the jury's estimate to ... rigid mathematical limitation,"—are entitled to substantial deference on appellate review.

*Id.* 108 S.Ct. at 1846 (citation and footnote omitted). Eversole argues the trial court erred in admitting the present value tables without benefit of expert testimony.

■ The trial court admitted five tables, each with a different rate of interest.[3] The jury was instructed that it could choose whatever rate of return it believed was reasonable. The trial court, in admitting the tables and instructing the jury, recommended one or more methods of calculating present value while leaving the selection of the method and the actual calculation to the jury. Eversole did not offer

---

**3.** The interest tables provided for interest rates of 6%, 7%, 8%, 9%, 10%. They were reproduced from the Tables Volume of Burns Indiana Statute Annotated at pp. 1097, 1099, 1101–03.

any experts to explain the tables to the jury and the trial court was not required to condition the admissibility of the tables on expert testimony. Giving the trial court's actions the required substantial deference on appellate review, we find no error.

## VII.

Eversole next contends the trial court erred in admitting statements he made at the disciplinary hearing regarding the possible violation of a safety rule. Conrail offered the statements to impeach Eversole's testimony at trial that the brake shoe was located outside the track gauge.

■ While federal law governs the substance of Eversole's FELA action, Indiana law governs questions of evidence and procedure. The general rule is that "In matters of evidence, the law of the forum controls, with respect to ... admissibility.... Where action is brought in a state court to enforce rights given by a federal statute, the rules of evidence of the state courts control, unless it is otherwise provided by the federal law." 31 C.J.S. *Evidence* § 5 at 821–22 (1964). This general principle has been held applicable to FELA proceedings. *DeLong v. Maine Cent. R.R. Co.* (1939), 6 A.2d 431, 136 Me. 194. Accordingly, Indiana law governs the admissibility of Eversole's statements given prior to trial.

■ Whether to admit or exclude evidence is a determination entrusted to the discretion of the trial court. *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626. A trial court's decision to admit evidence will be reversed for an abuse of discretion only when the court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Brenneman Mechanical & Elec., Inc. v. First Nat'l Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, *trans. denied.* Further, "[t]he trial court has the discretion to determine the scope of a cross-examination and only a clear abuse of that discretion warrants reversal. Such determinations by the trial

court necessarily entail making judgments on the admissibility of controversial evidence." *City of Indianapolis v. Swanson* (1983), Ind., 448 N.E.2d 668, 671 (citations omitted).

■ The trial court did not abuse its discretion in admitting Eversole's statements made at the disciplinary hearing. Eversole testified at trial that the brake shoe was located outside the gauge. At the disciplinary hearing, he testified the brake shoe was located inside the gauge. His prior inconsistent statement was admissible as impeachment·evidence to test his credibility on cross-examination. *Stutzman v. State* (1968), 250 Ind. 467, 235 N.E.2d 186.

## VIII.

■ Eversole next contends the trial court erred in granting Conrail's motion for setoff. Essentially, Eversole argues that Conrail was entitled to a setoff from the award of lost wages only. Because the jury returned a general verdict, Eversole contends that the amount of lost wages cannot be determined. Eversole cites Indiana cases to support his position.

The right to setoff arises from the FELA statute. 45 U.S.C.A. § 55 (West Supp. 1986). Accordingly, an analysis of the trial court's actions requires the application of federal law. *Monessen, supra.* In *Clark v. Burlington N., Inc.* (8th Cir.1984), 726 F.2d 448, 451, the eighth circuit held, "where ... the employer clearly intends to make a voluntary disability plan supplemental to sums recovered under the FELA, setoff is appropriate."

In the present case, Eversole was subject to a collective bargaining agreement which governed the payment of supplemental benefits and provided for setoff. The applicable section of the agreement provided:

6. *Liability Cases.*

In cases of a disability for which the employee may have a right of recovery against either the employing railroad or a third party, or both, benefits will be paid under this Plan pending final resolution of the matter so that the employee

will not be exclusively dependent upon his sickness benefits under the Railroad Unemployment Insurance Act. However, the parties hereto do not intend that benefits under this Plan will duplicate, in whole or in part, any amount recovered for loss of wages from either the employing railroad or a third party, and they intend that benefits paid under this Plan will satisfy any right of recovery for loss of wages against the employing railroad to the extent of the benefits so paid. Accordingly, benefits paid under this Plan will be offset against any right of recovery for loss of wages the employee may have against the employing railroad.... For purposes of this Paragraph, a recovery which does not specify the matters covered thereby shall be deemed to include a recovery for loss of wages to the extent of any actual wage loss due to the disability involved. *Record* at 1028–29. It is clear from this paragraph that the employer intended to make its disability payments supplemental to any recovery under the present FELA action.

In addition, evidence of lost wages was placed before the jury. Absent any contrary indication, it is reasonable to assume the jury considered this evidence in calculating its damage award. *See Clark, supra.* The trial court properly granted Contrail's motion for setoff as required by federal law.

### IX.

 Finally, Eversole argues the trial court erred in its assessment of costs. The taxing of costs is not a right inextricably tied to Eversole's rights under FELA. Thus, the question is not one of substance and must accordingly be evaluated pursuant to state law. *Monessen, supra.*

Indiana law allows the prevailing party to recover costs. Ind.Trial Rule 54(D). Eversole requested the trial court tax costs as follows: (1) $46 for filing fee; (2) $1,178.80 for depositions; and (3) $1,210 in witness fees. The trial court awarded the filing fee but denied Eversole's other two requests.

 The trial court properly denied Eversole's request for deposition fees because "expenses incurred in the transcription of depositions may not be taxed as costs." *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127, 131. Further, the trial court properly denied Eversole's request for witness fees. In order to recover such fees, there must be evidence that the amounts were advanced and that such amounts do not exceed statutory limitations. *Calhoun v. Hammond* (1976), 169 Ind.App. 39, 345 N.E.2d 859. Eversole did not present such evidence to the trial court, and, therefore, his request for witness fees was appropriately refused.

Judgment affirmed.

GARRARD, P.J., and ROBERTSON, J., concur.