**Kevin L. PRUITT, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 56S00–9210–CR–823.**

Supreme Court of Indiana.

Oct. 20, 1993.

Rehearing Denied Jan. 11, 1994.

Harry J. Falk, Bower & Falk, Kentland, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of Murder for which appellant received an enhanced sentence of fifty-eight (58) years.

The facts are: Gordon Warren, the victim in this case, was a real estate agent who lived in Indianapolis. On May 14, 1991, Warren left Indianapolis to drive to Chicago. At the intersection of Interstate 65 and State Road 10 in Newton County, his car broke down. In order to continue to Chicago, he rented a car in Demotte,

Indiana, and his car was towed to a garage in Lowell, Indiana. He was told he would have to return to pick up his car as it could not be repaired immediately. Ten days later, on the morning of May 24, 1991, Warren told his ex-wife that he was going to pick up his car.

Warren and appellant then engaged in a telephone conversation. Warren's son-in-law overheard a telephone conversation in which Warren asked the other person to ride with him to pick up his car. It was necessary for a person to accompany Warren because he had to pick up his car at one location and return the rental car to another location. Warren then left the house and picked up appellant. Between 1:00 and 1:30 that afternoon, Warren was found shot to death along a roadway in Newton County. A search of Warren's body disclosed, among other things, a small package of heroin.

Later that afternoon, appellant returned to his girlfriend's apartment where he met her roommate's nephew, Jonathan Smith. Appellant requested that Smith assist him in dropping off a rental car. They drove to the parking lot of a grocery store in Indianapolis at 46th Street and Allisonville Road, where appellant entered a car later identified as the car Warren had rented. Smith drove appellant's truck and followed appellant who drove the rental car to a church parking lot at 46th Street and Arlington. There appellant parked the car, threw the keys on the floor, and returned to the truck. At that time, Smith noticed that appellant had bloodstains on his clothes and shoes. During the ride back to the girlfriend's apartment, appellant told Smith someone tried to rob him and "it was either him or them."

Church employees noticed the parked rental car and notified authorities who discovered it was the same car that had been involved in the homicide in Newton County. An analysis of blood found inside the car was consistent with an analysis of Warren's blood. When questioned by the police, appellant admitted that he had talked with Warren on the telephone the morning of May 24, and that he had been in Warren's car on that morning.

Subsequently, appellant failed to appear on three different occasions for scheduled appointments to give blood and hair samples. In the first week of August, appellant and his girlfriend moved from Indianapolis to Milwaukee. Deborah Cheeks, with whom appellant's girlfriend lived, and Jonathan Smith each told police that they had heard appellant state that he had shot Warren. However, at trial, Cheeks testified that she had no knowledge of the murder. Appellant's girlfriend, Sharon Golden, who had married appellant before the trial, had given statements to the police indicating appellant's guilt. However, at trial, she stated she had been "misquoted."

Appellant claims the trial court erred when it permitted the jurors to separate during deliberation. At approximately 3:00 p.m. on May 21, 1992, the jury retired to deliberate on their verdict. Approximately two hours later they were returned to the courtroom, admonished, and permitted to separate and return to their individual homes.

On the morning of May 22, 1992, the jury returned to continue their deliberation and returned a verdict of guilty in approximately one and one-half hours. Although appellant made no objection to the jury separation, he now maintains that in permitting the jury to separate the court committed fundamental error. There is no question that this Court has held that a jury should remain together from the time their deliberations begin until the verdict is returned. *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190. If the jury in fact is allowed to separate, the State then must prove beyond a reasonable doubt that the deliberation of the jurors was not affected by the separation and that the verdict clearly appears to be supported by the evidence. *Id.*

In the case of *Bales v. State* (1981), 275 Ind. 515, 418 N.E.2d 215, this Court held that it was reversible error for a jury to be allowed to interrupt their deliberations for a period of ten and one-half hours

in the absence of the State's proof beyond a reasonable doubt that the separation did not influence the jury adversely. However, where, as in the case at bar, the court clearly announces to counsel that it intends to permit the jury to go to their homes for the evening and defense counsel poses no objection, appellant is not in a position to raise the issue for the first time on appeal. *See Butler v. State* (1963), 244 Ind. 620, 193 N.E.2d 899.

■ In the case at bar, a post-trial hearing was held in which each of the twelve jurors testified concerning the recess. Each of the twelve testified individually that the deliberations were not affected by the separation of the jury. Each testified that they had no communication with anyone about the case during recess, heard or saw nothing in the media regarding the case, were in no way influenced adversely to defendant as a result of the recess, and in no way were rendered less capable of discharging their duties because of the separation. It thus appears the State sustained its burden of proving that the separation in fact did not affect appellant adversely.

Although permitting separation during deliberation should not be permitted over objection of a defendant, when, as in the case at bar, the State demonstrates lack of improper influence, we cannot say that fundamental error was committed.

Appellant claims the trial court erred in denying his motion for individualized *voir dire*. The record shows that when appellant first moved for individualized *voir dire* for the purpose of determining racial bias, drug awareness, and prejudices thereto, the trial court ruled that the prospective jurors would be *voir dired* in groups of three. However, during the *voir dire* examination, the trial court amended the procedure and required counsel to complete *voir dire* of the prospective jurors in a group.

Appellant's claim of error is that the court erred first in not allowing individualized *voir dire,* and then erred again in amending its prior order limiting *voir dire* to three prospective jurors. Appellant ar-

gues that the fact he is black, that he was an admitted drug dealer, and the Rodney King Los Angeles riots might cause jurors to be prejudiced against him, was ample reason for the trial court to require individualized *voir dire* of the jurors. He cites *Hadley v. State* (1986), Ind., 496 N.E.2d 67.

In *Rondon v. State* (1989), Ind., 534 N.E.2d 719, *cert. denied,* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383, this Court acknowledged the rule in *Hadley* but held there was no error in the trial court's denial of a defendant's request for individualized *voir dire* in the absence of any showing by the defendant of highly unusual or potentially damaging facts concerning the defendant. We have held that a defendant has no absolute right to have each venireman questioned separately. *Lowery v. State* (1989), Ind., 547 N.E.2d 1046, *cert. denied,* 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 176. There is nothing in this record to demonstrate any unusual situation existing in Newton County that would require individualized *voir dire.*

■ The fact that appellant is black or the fact that he was a drug dealer did not differentiate this case from any other trial where those facts were in existence. The fact of the Los Angeles riots had no direct impact on appellant nor does he claim such an impact. We cannot say the trial court abused its discretion in first allowing jurors to be examined in groups of three and then deciding in the interest of time to speed up jury selection. There is no demonstration in this record that appellant was prejudiced in any way by this procedure.

■ Appellant claims the trial court erred in permitting the jury to hear the audiotaped statement of Deborah Cheeks following the recantation of her statement. On September 6, 1991, Cheeks gave a taped statement to Indiana State Police detectives. At trial, she recanted her prior statement and claimed that what she had said on tape was a lie. Appellant contends that in view of the fact she admitted she had lied on the tape, she thus had impeached herself, and it was improper for the prosecuting attorney to continue the

impeachment by playing the tape. He cites *Murphy v. State* (1983), Ind., 453 N.E.2d 1026.

The trial court first ruled that because she had recanted her prior statement, he would not permit the use of the tape. However, as examination of Cheeks progressed, she claimed that her taped statement was false because she had been subjected to police duress. At that time, the State again offered the tape, this time for the purpose of showing that she was not submitted to duress during the making of the tape. The court then permitted the playing of the tape for the limited purpose of demonstrating that she in fact had not been submitted to duress.

It is true, as cited by appellant, that this Court has held that once a witness has admitted an inconsistent prior statement she has impeached herself and further evidence is unnecessary for impeachment purposes. *Walker v. State* (1975), 166 Ind. App. 286, 335 N.E.2d 834. In the situation at bar, the jury was faced with the question of when Cheeks was telling the truth. Although the court's ruling was correct in the first instance, when Cheeks continued her testimony that she had been subjected to duress, it was proper for the State to be able to present evidence which might convince the jury that she in fact had not been submitted to duress.

■ We must presume on appeal that the jury followed the instruction of the trial court and considered that evidence for that limited purpose only. *Duncanson v. State* (1987), Ind., 509 N.E.2d 182; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900. In *Brown v. State* (1964), 245 Ind. 604, 201 N.E.2d 281, this Court held that we will presume the jury followed the trial court's instruction regarding the limited purpose for which evidence may be considered. Under the circumstances, we find no error in permitting the jury to hear the tape for the limited purpose stated by the trial court.

Appellant claims the trial court erred in permitting the jury to hear the taped statement of Sharon Golden Pruitt and to view her written statement. In the taped statement, Sharon told police that on the day Warren was killed, appellant had a telephone conversation with him, then left within fifteen minutes and did not return until approximately 2:00 p.m. She also told the police that when appellant later left town, he might have done so because of things "getting too hot" for him or because of his knowledge about the murder. She also gave a written statement to police on September 11, 1991 in which she stated that a couple of days after Warren's death she heard appellant admit he had killed a man.

■ At trial, Sharon testified that on the morning of May 24, 1991 appellant arrived at the apartment about 8:00 a.m. and remained there until 1:00 or 2:00 p.m. She admitted making a prior statement to police but claimed she had been "misquoted" in both the taped statement and the written statement. She expressly denied having told police that appellant told her he had killed a man. In admitting both the taped statement and the written statement, the trial court instructed the jury that the statements were being admitted in evidence for the limited purpose of considering the truth and veracity of the witness. The trial judge did not err in permitting the statement to come in evidence. *See Stutzman v. State* (1968), 250 Ind. 467, 235 N.E.2d 186 and *Burt's Wrecker Serv., Inc. v. Eusey* (1984), Ind.App., 464 N.E.2d 23.

Appellant contends the trial court erred when it permitted State's witness, Francis J. Simmons, to testify regarding statements made by Jonathan Smith. Smith testified as a State's witness and described how he had met appellant on May 24, 1991 and that appellant asked him to help drop off a rental car, that they picked up the car at a grocery parking lot, and that they drove it to a church parking lot where it was abandoned. The car was found to be the one rented by Warren. He also testified that at that time appellant had blood spattered on his clothing.

On cross-examination, the defense attorney asked if Smith had once reported that

his statement to police was the result of police harassment and threats by Officer Simmons. He also was cross-examined about a statement he had made to a judge in Virginia where he was being held when he was returned to Indiana to be a witness. In order to rebut the implications which appellant's attorney had raised concerning the possibility that Smith was testifying falsely because of police pressure, the State called Officer Simmons to describe his contact with Smith and to testify as to what Smith in fact had told him. The testimony of Officer Simmons coincided with the testimony given by Smith at the trial.

■ The State cites *Modesitt v. State* (1991), Ind., 578 N.E.2d 649 to support their contention that the testimony of Simmons was proper. However, in his reply brief, appellant claims that the State has misread *Modesitt* and further that *Modesitt* would not apply because the court specifically stated it would not be given retroactive application. However, whether *Modesitt* is applicable to the case at bar, the testimony of Simmons was admissible in view of the issue raised by appellant on cross-examination that Smith was testifying falsely because of police pressure. It was proper for the State to submit the testimony of Simmons to rebut this implication.

■ The fact that a hearsay objection was made does not give rise to reversible error because admission of hearsay evidence is not grounds for reversal where it merely is cumulative of other evidence admitted. *Hendricks v. State* (1990), Ind., 562 N.E.2d 725. Simmons' testimony, although hearsay so far as his reiteration of what Smith had told him, coincided with Smith's direct testimony and therefore was merely cumulative to evidence previously presented. There was no reversible error here.

■ Appellant claims the trial court erred in imposing sentence. He contends the trial court erred in enhancing his sentence from the presumptive forty (40) years to fifty-eight (58) years. In imposing sentence, a trial court must: 1) identify all significant mitigating and aggravating circumstances, 2) state the specific reasons why each circumstance is considered to be mitigating or aggravating, and 3) balance the mitigating and aggravating circumstances in order to determine whether the aggravating circumstances offset the mitigating circumstances. *Henderson v. State* (1986), Ind., 489 N.E.2d 68.

■ In the case at bar, the trial judge cited as aggravating circumstances the appellant's criminal history including armed robbery when he was fifteen years of age and the appellant's admission that he engaged in a continuing enterprise of dealing in illegal drugs. A history of criminal activity is sufficient in and of itself to impose an enhanced sentence. *Wills v. State* (1991), Ind., 578 N.E.2d 363. The judge also observed that prior incarceration had not proved of any benefit to appellant and that he was in need of further rehabilitation in a penal facility.

The court further found that the murder was committed while appellant was out on parole or probation for another crime. The trial court did identify several mitigating factors including appellant's church attendance and his past employment record. The court found that the aggravating factors outweighed the mitigating factors. It is apparent the trial judge complied in every respect with the requirements for imposing sentence.

Appellant claims the trial court failed to properly instruct the jury. He contends the judge failed to instruct them that they are the exclusive judge of all questions of fact and that they have a right to determine the law. The record discloses that appellant tendered a preliminary instruction which the court gave. This instruction advised the jury that they had the right to decide both the law and the facts. The instruction tendered by appellant was a proper instruction and was given. Appellant also tendered a final instruction which reiterated this general principle and advised the jury that they were not to depend upon a single instruction but were to consider all instructions given. This instruction also was read to the jury.

Appellant cannot now complain that these instructions are not complete because they were tendered by him. *Amburn v. State* (1990), Ind.App., 550 N.E.2d 762. Nor can appellant now argue that the other instructions given by the court were incomplete when he did not tender a more complete instruction on the issue. *Denman v. State* (1982), Ind.App., 432 N.E.2d 426; *see also Clark v. State* (1990), Ind., 561 N.E.2d 759. We see no error in the manner in which the jury was instructed.

Appellant contends the verdict is not supported by the evidence. Appellant cites *Roby v. State* (1986), Ind., 495 N.E.2d 721 for the proposition that a conviction cannot be based solely upon a reputed out-of-court statement unless there is substantial evidence of probative value from which the trier of fact could have reasonably inferred that the out-of-court statement was credible.

Appellant argues that the time sequences established by the testimony did not allow time for appellant to have been involved in the murder. There was evidence from which the jury could find that appellant left with the victim from Indianapolis around 8:30 in the morning. The victim's body was found in Newton County some 120 miles northwest of Indianapolis about noon. Smith testified that he thought it was approximately 10:00 or 10:30 a.m. when he met appellant to take the rental car to a different location. However, he stated he was not wearing a watch and could be mistaken about the time.

The evidence which is unrebutted and not speculative is the fact that the automobile which appellant moved from one location to another in Indianapolis sometime on the same day the victim died was the car the victim had rented, and laboratory tests showed the blood found inside the car tested consistent with that of the victim. The time sequence presented to the jury represents a relatively tight schedule in leaving Indianapolis at 8:30 in the morning, driving over 100 miles to Newton County then returning to Indianapolis.

The jury nevertheless was entitled to draw the conclusion that the victim left Indianapolis with the intent of returning the rental car to Newton County, that he was murdered in the car in Newton County, and that the car was returned to Indianapolis and abandoned on that same day. It was further justified in finding that appellant was the person in possession of that car at the time it was abandoned in Indianapolis. The evidence in this case is ample to support the verdict of the jury.

Appellant claims the trial court erred in refusing to permit him to present evidence of the victim's use of narcotic drugs. At the time appellant made this offer, the jury already had before it the fact that the victim had purchased drugs from appellant, that he had reneged on a $1,500 drug order stating that he did not have that much money, and that the police had found narcotics on the victim's body at the time his murder was discovered.

It is appellant's argument that he should have been allowed to present such evidence because it would support his theory that somebody other than appellant had killed the victim because of his activities in the drug world. Appellant offered the victim's ex-wife, Catherine Alley, to testify that the victim had a cocaine habit, was involved in narcotic trafficking, and had been arrested and found in possession of controlled substances in Indianapolis. She also would have testified that she had heard that the victim's death was related to his service as an informant.

Proof of a homicide victim's character and reputation are generally inadmissible at trial. *Holder v. State* (1991), Ind., 571 N.E.2d 1250; *Halbig v. State* (1988), Ind., 525 N.E.2d 288. The testimony proffered by the ex-wife that she had heard he was killed because of his activity as an informant, of course, would have been hearsay and inadmissible. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313. Her other testimony that he was involved in drug trafficking was already a fact before the jury. We see no error in the trial judge's refusal to permit this drumbeat evidence to come before the jury.

*Hardin v. State* (1993), Ind., 611 N.E.2d 123.

Appellant's position that he should have been allowed to put this evidence before the jury to support his theory that someone else had killed the victim is pure speculation on appellant's part and is not supported by any evidence in this case. In fact, the tight time frame of which appellant complains appears to lessen the chance that anyone other than appellant had a part in the murder.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER and KRAHULIK, JJ., concur in result without separate opinion.