Glenn Patrick BRADFORD,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 82S00–9311–CR–1255.

Supreme Court of Indiana.

Dec. 12, 1996.

Rehearing Denied May 22, 1997.

Terry Noffsinger, Lawrence L. Grimes, Noffsinger, Price, Bradley & Shively, Evansville, James Voyles, Dennis E. Zahn, Mark Webb, Symmes, Voyles, Zahn, Paul & Hogan, Indianapolis, for Defendant-Appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Stanley M. Levco, Prosecuting Attorney, Vanderburgh County, Evansville, for Appellee.

DICKSON, Justice.

The defendant was convicted of arson, a Class B felony, and the murder of Tammy Lohr, whose body was found with twenty-one stab wounds after firefighters extinguished an early-morning fire at her Evansville residence on August 2, 1992. In this direct appeal, he presents the following issues for our review: whether sufficient evidence was presented to support his convictions; whether the verdicts are contrary to law because of the State's "adoption" of a theory that the defendant killed the victim while acting under sudden heat; whether the discovery of new evidence entitles him to a new trial; whether hearsay evidence was erroneously admitted at trial; whether juror misconduct entitles him to a new trial; and whether the trial court erred by allowing the jurors to separate overnight during the course of jury deliberation.

### 1. *Sufficiency of the Evidence*

■ The defendant claims that the evidence presented was insufficient to convict for two reasons: (1) the State presented no evidence specifically placing the defendant at the victim's house during the time it believes she was killed, and (2) he had insufficient opportunity to have set the fire the following morning when her body was discovered. An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. We will sustain a conviction whenever each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Lay v. State,* 659 N.E.2d 1005, 1013 (Ind.1995); *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995).

Summarizing the evidence supporting the judgment, we find that on August 2, 1992, Evansville police and firefighters responded to a call made shortly after 6:30 a.m. indicating the possibility of a fatal fire. The defendant, an Evansville Police officer, was at the scene when the firefighters arrived, having made the call himself. The defendant. informed the firefighters that he discovered the fire already in progress and that he believed the resident of the house was still inside. The body of the victim was found on her bed. An autopsy revealed that she had been stabbed twenty-one times and had died sometime in the twenty-four hour period preceding the fire. The body of the victim's dog was also found stabbed. Investigators con-

cluded that the fire was the result of arson and that the arsonist had staged a burglary, prior to setting the fire, in order to cover up the murder.

The State presented evidence that the defendant had an extra-marital affair with the victim for four years prior to her death. The defendant was at the victim's house until approximately 10:20 p.m. of the evening prior to the fire, at which time he left and went to work. The victim's father testified that he spoke with the victim on the telephone from 10:25 p.m. until approximately 11:00 p.m. The State presented evidence that the defendant's whereabouts from 10:20 p.m. until 6:15 a.m. on the night in question were accounted for, except for a significant gap on his activity log from 11:06 p.m. until 12:10 a.m. A witness, Elizabeth Spradley, testified that she passed by the victim's house sometime around 11:00 p.m. and saw a marked Evansville City Police car in the driveway. The defendant accounted for the time between 11:06 p.m. and 11:27 p.m. by testifying that he was patrolling North Main Street and that, during that time, he saw Officers Mittendorf and Thompson at an accident at Main and Michigan, though Officer Mittendorf testified he had not seen the defendant at the accident. The defendant testified that he made a call to central dispatch at 11:27 p.m. to inquire as to whether there were any local arrest warrants out for George Russell, a reputed drug dealer with whom the defendant was familiar and whom the defendant testified he was following at the time in question. George Russell, however, testified that he was not out on the streets at any time that evening. The defendant testified that he was patrolling the northern area of his district during the remaining period—11:27 p.m. to 12:10 a.m.

■ The defendant argues that the only evidence potentially relevant to his whereabouts at the time of the murder "came from a witness with more than one theft conviction and was hotly contested" and should thus "be

viewed in context." Brief of Appellant at 20. The defendant asks this Court to reweigh the evidence and assess the credibility of the witness, which we cannot do. *See Lay,* 659 N.E.2d at 1013 (Ind.1995); *Kingery v. State,* 659 N.E.2d 490, 493 (Ind.1995). The jury, not this Court, judges the credibility of the evidence presented and determines the facts from that evidence. *Kingery,* 659 N.E.2d at 493. We recognize that conflicting evidence was presented concerning the defendant's whereabouts during the time in question. However, "[t]he jury was not required to believe the defendant's evidence. The jury had every right, as it did here, to believe the State's evidence instead." *Moore v. State,* 652 N.E.2d 53, 57 (Ind.1995). A rational and reasonable jury could have found that the defendant had sufficient opportunity to commit the crimes.[1]

The defendant also argues that the testimony from Officer Minnis as to whether the defendant had the opportunity to set the fire amounted to an "incredible" or "absurd proposition." Brief of Appellant at 24. An expert for the State testified that the fire began between 6:33 a.m. and 6:36 a.m. The defendant was photographed by a bank camera driving towards the victim's house at 6:34:04. He called the fire department at 6:35:09 from the victim's house. Officer Minnis testified that his own tests revealed that it would be possible to drive from the place where the defendant was photographed to the victim's residence, enter the house, spread a trail of gasoline, light it and exit the house in sixty-five to seventy seconds. Additionally, the State presented testimony from its expert that the defendant's account to the police of what he was able to see upon entering the building was inconsistent with the actual conditions of the fire. As with the defendant's previous claim, he is asking this Court to reweigh the evidence and assess the credibility of the witness, which we cannot do. A rational and reasonable jury could have found that the defendant had sufficient

---

1. Furthermore, circumstantial evidence may form the *entire* basis for a murder conviction: the State was not required to present "evidence specifically placing Bradford" at the crime scene at the time it alleges the crime occurred. *Moore,* 652 N.E.2d at 55; *Green v. State,* 587 N.E.2d 1314, 1315 (Ind.1992). We will not disturb a verdict if the jury could reasonably infer that the defendant is guilty beyond a reasonable doubt from the circumstantial evidence presented. *Biggerstaff v. State,* 432 N.E.2d 34, 36 (Ind.1982).

opportunity to start the fire based on the evidence presented.

The defendant attempts to circumvent these results by arguing that the "incredible dubiosity" rule applies to testimony from Elizabeth Spradley and Officer Minnis. The defendant argues the testimony of Ms. Spradley is incredibly dubious because of her "vulnerability to impeachment" and the fact that several other witnesses drove by the victim's house at the same time as Ms. Spradley and did not report seeing a police car. Brief of Appellant at 22–23. The defendant also argues the evidence presented by Officer Minnis that the defendant could have started the fire in the time frame presented is incredibly dubious because it "clearly flies in the face of logic." Brief of Appellant at 24.

■ Application of the rule is limited to cases where a witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a resulting complete lack of circumstantial evidence of the appellant's guilt. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). This Court has noted that the application of this rule is rare and the standard utilized is whether "the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Pardue v. State,* 502 N.E.2d 897, 898 (Ind.1987).

The evidence shown by the record does not lead to the conclusion that the testimonies complained thereof were inherently contradictory. In addition, there exists circumstantial evidence to support the testimonies of both witnesses: the significant gap on the defendant's activity log from 11:06 p.m. until 12:10 a.m. and the testimony from the State's expert that the defendant's account of what he could see upon entering the building was inconsistent with the actual conditions of the fire. We therefore decline to find that no reasonable person could believe both Ms. Spradley and Officer Minnis' testimony. The jury could reasonably conclude that the defendant was guilty of the offenses charged beyond a reasonable doubt.

### 2. *Murder Verdict Contrary to Law*

■ The defendant next contends that the State "embraced the theory that [the defendant] killed Tammy while acting in sudden heat." Brief of Appellant at 16. As such, the defendant argues that the murder verdict was "contrary to law." *Id.*

During closing arguments, the prosecution, in describing the multiple stab wounds and presumed spontaneous manner in which the victim was killed, stated that the murder "sounds ... like a crime of passion" and accused the defendant of having been "out of control" and in a "rage." Record at 3922–28. The defendant contends that the prosecutor's statements thereby acknowledged the existence of "sudden heat," an element of voluntary manslaughter and the ultimate murder conviction was therefore contrary to law because the prosecution did not negate such "sudden heat."

■ "[I]t has long been a basic tenet of Indiana law that, although the defendant bears the burden of placing his affirmative defense in issue, the prosecution bears the ultimate burden of negating any defense which is sufficiently raised by the defendant." *Wolfe v. State,* 426 N.E.2d 647, 652 (Ind. 1981). Thus, if there has been some evidence of sudden heat presented at the trial, then the state bears the burden of negating the existence of sudden heat beyond a reasonable doubt and failure to do so reduces what otherwise would be murder to voluntary manslaughter. *Id.* This court has held that, while the defendant bears no burden with respect to sudden heat, he does bear the "burden" of placing the issue in question where the state's evidence has not done so. *Id.* In *Wolfe,* the State sought a murder conviction and the defendant raised the defense that his actions were the result of sudden heat. *Id.* at 653. The defendant presented evidence at trial tending to show sudden heat and the trial court instructed the jury that the burden of proof was upon the State to prove the absence of sudden heat beyond a reasonable doubt. *Id.*

*Wolfe* involved very different circumstances than those presented in this case. The only evidence of sudden heat that the defendant argues was presented by either

side is the State's references *in its opening and closing statements* to the fact that this was a "crime of passion" and that the defendant was in a "rage" and was "out of control." It is well established that statements made by the attorneys—in opening statements, closing arguments or otherwise—are *not* evidence. *See, e.g., Fleenor v. State,* 622 N.E.2d 140, 144 (Ind.1993), *cert. denied,* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994); *Kindred v. State,* 524 N.E.2d 279, 291 (Ind.1988); *Kalady v. State,* 462 N.E.2d 1299, 1308 (Ind.1984). Furthermore, the jurors in this case were specifically instructed and repeatedly reminded as follows:

> These opening statements are not evidence.... When the evidence is completed, the attorneys will make final statements. What the attorneys say is not evidence.

Record at 188 (Judge's Preliminary Instructions).

> [W]hat the attorneys say during the trial is not evidence. The only evidence you're to consider in this case in determining the facts is what you hear and see from this witness stand.

Record at 766 (Judge's Admonitions Prior to Opening Statements).

> This part of the trial is opening statement and as [the judge] told you opening statement is not evidence. The only thing you can consider in deciding your verdict is what you hear on the witness stand.

Record at 757 (State's Opening Statement).

> We are now ready for final argument. You've heard all the evidence in this case from which to determine the facts. Now the attorneys are going to speak to you in final arguments and then I will give you instructions. Remember what I told you earlier that what the attorneys say is not evidence.

Record at 3918 (Judge's Admonitions Prior to Closing Arguments).

Finally, the defendant maintained throughout his trial that he simply had not committed the acts charged. He did not claim that he had killed the victim under sudden heat. The defendant proposed no instructions relating to voluntary manslaughter. He pro-

posed only an instruction relating to murder. The Court gave no instruction as to voluntary manslaughter. Because no issue of sudden heat was presented by the trial evidence, the State was not required to negate the existence of sudden heat and the murder verdicts returned were not contrary to law.

### 3. *Newly Discovered Evidence*

■ The defendant alleges that he is entitled to a new trial based on newly discovered evidence supporting his alibi. Specifically, the defendant seeks a new trial based on: (1) testimony from Darrein Weatherford placing the defendant at an accident scene during the time the State argues the defendant killed the victim; and (2) testimony that the victim concluded her telephone conversation with her father at 10:49 p.m. because someone was at the door.

On December 19, 1994, the defendant filed a request with this Court to suspend his appeal and remand his case to the trial court to clarify missing portions of the record and for hearings on newly discovered evidence. This Court issued an order granting the defendant's request on December 22, 1994. In the defendant's request for remand, he specifically listed four areas in which additional supplementation was requested. While the defendant raised the existence of newly discovered evidence that the victim's telephone call ended at 10:49 p.m., he did not raise the existence of newly discovered evidence relating to Weatherford's testimony. When the trial court addressed the defendant's claims at the hearing on March 9, 1995, the defendant attempted to call Weatherford as a witness. The trial court refused to hear the testimony because it was not covered in his original petition to this Court and informed the defendant he should repetition this Court as to any issues involving Weatherford. The defendant then made an offer to prove and called Weatherford to testify.

■ A proper offer to prove is an "offer" from counsel regarding what a witness would say if he was allowed to testify and has been described by this Court as "making a record as to the substance and nature of the precluded testimony. Without such a record the appellate court has no

information from which to make a ruling." *Wallace v. State*, 553 N.E.2d 456, 462 (Ind. 1990), *cert. denied*, 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). The purpose of an offer to prove is to preserve for appeal the trial court's allegedly erroneous exclusion of evidence. *Id.* The defendant has not raised on appeal the propriety of the trial court's exclusion of Weatherford's testimony. The defendant instead seeks to have this Court use his offer of proof as part of the record in order to consider the substance of Weatherford's testimony as it relates to a new trial. The offer of proof is part of the record only insofar as the defendant chooses to challenge the trial court's exclusion. The defendant has not done so and we will not consider the offer for any other purpose.

 The defendant was, however, permitted on remand to present testimony in which the victim's mother purportedly told others that the victim's father told her that the victim stated she had to get off the phone because someone was at the door. This Court has articulated a nine-part test for determining whether to grant a new trial upon a motion to correct error based on newly discovered evidence. *See Fox v. State*, 568 N.E.2d 1006, 1007 (Ind.1991); Ind.Crim. Rule 16; Ind.Trial Rule 59. Such a motion must be supported by affidavits that demonstrate:

> (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result.

*Fox*, 568 N.E.2d at 1007. In ruling on the ninth of these factors, the judge may "consider the weight that a reasonable trier of fact would give it" and "evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Id.* It is within the trial court's discretion to deny a motion to correct error based on newly discovered evidence. *Id.* On

appeal, the denial of a motion based on newly-discovered evidence will be reversed only upon a showing that the trial court abused its discretion and the defendant has the burden to show that the newly-discovered evidence meets the standard for a new trial. *Nunn v. State*, 601 N.E.2d 334, 337 (Ind.1992).

The trial judge found that the evidence presented did not satisfy the ninth factor because it did not "give rise to a strong likelihood that its presentation at a new trial would cause a different result to be reached by the jury." Supp. Record at 84. The testimony of the victim's mother and father was equivocal at best. The victim's father testified that he had never stated that the victim specifically told him that someone was at the door. He maintained throughout his deposition that he just had a "vague feeling" that someone may have been at the door. Supp. Record at 290–307. The victim's mother testified that she did not remember making any statements to anyone regarding her husband's conversation, nor does she remember her husband ever telling her anything about the conversation because, at the time this was to have occurred, she had been taking medication which "could cause you to hallucinate, imagine things that aren't there." Supp. Record at 313–15. In view of these facts, we cannot say the trial judge abused his discretion in denying the motion for a new trial.

### 4. *Admission of Hearsay*

 The defendant asserts that the trial court improperly admitted hearsay evidence and testimony. He claims error in the admission of newspaper television schedules during the testimony of Detective Minnis and the testimony of the pathologist which referred to a consultation with another pathologist.

The defendant contends the admission of newspaper television schedules was "properly objected to *on hearsay grounds*, overruled and admitted." Brief of Appellant at 44 (emphasis added). However, a careful inspection of the record reveals that the defendant objected to the introduction of the television schedules as *improper impeachment evidence*, stating, "The State can't impeach it's own witnesses." Record at 2533. Soon

thereafter, the trial court asked the defendant to restate his objection, to which the defendant replied: "Well, my objection is, is that, you know, that goes to impeach their own witness." Record at 2537. The trial court overruled the objection stating, "I do not think it's impeachment." Record at 2550.

The twenty-one pages of discussion on this issue in the record do not contain any mention of the word "hearsay." Consequently, the defendant has waived the any objection on hearsay grounds, as he "may not state one ground for his position at trial and state another ground on appeal ... to do so constitutes a waiver of the issue." *Jester v. State,* 551 N.E.2d 840, 843 (Ind.1990).

 The defendant next contests the admission of testimony by the pathologist who performed the autopsy, Dr. Heidingsfelder. The defendant claims that the pathologist's reference to his consultation with Dr. Pless and his simultaneous change of opinion presented the jury with the opinion of Dr. Pless and, because it was presented at trial by someone other than Dr. Pless, constituted inadmissible hearsay.

We disagree with this characterization of the evidence. Hearsay is defined as a "*statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801 (emphasis added). The record reflects the following testimony:

> [State] Dr. Heidingsfelder, in your deposition when Mr. Grimes was questioning you about your opinion as the ... to the time of death, did you tell him you intended to consult with another forensic pathologist to see if he could shed some light on the issue of the time of death for you?
>
> [Doctor] That's correct, sir.
>
> [State] And who did you tell him you were going to consult with?
>
> [Doctor] Dr. Pless.
>
> [State] And have you consulted with him since the deposition?
>
> [Objections By the Defendant]
>
> [State] Dr. Heidingsfelder, did you consult with Dr. Pless as you said you wanted to

do to see if he could shed some light on the issue of the time of death after the deposition?

> [Doctor] I did, sir.
>
> [State] Had you consulted with him before the deposition?
>
> [Doctor] No, sir.
>
> [State] And had you consulted with him before you originally gave your opinion of five or six hours?
>
> [Doctor] No.
>
> . . .
>
> [Defense] When did you consult with him?
>
> [Doctor] I spoke with him by telephone this last week, I believe it was, after the deposition, and I sent him written materials and slides and photographs for his review.
>
> [Defense] That's all.

Record at 1941–42.

The record shows that no statements made by Dr. Pless were offered at trial. The witness made no claims about anything Dr. Pless might have said in the course of their consultation. The statement that Dr. Heidingsfelder consulted with Dr. Pless is not hearsay.

### 5. *Jury Misconduct and Separation*

 The defendant alleges several errors involving the jury: (1) two jurors gave false statements on voir dire; (2) the jury conducted unauthorized and impermissible experiments during its deliberations; and (3) the trial court erred in permitting the jury to separate after deliberations had begun.

As previously noted, the defendant obtained leave of this Court to suspend the appeal and remand to the trial court for further proceedings to make a more complete factual record. Supp. Record at 86. At the remand hearing the defendant sought to have the trial court address the possibility of whether two jurors had given false statements on their juror questionnaires. The trial court refused, finding that this issue was not part of the defendant's petition to this Court and therefore not proper subject matter at the remand hearing. The defendant then made an offer to prove. As we stated

in Section 3, *supra*, an offer of proof is part of the record only insofar as the defendant challenges the propriety of the trial court's exclusion of evidence. As before, the defendant in this case is not challenging the exclusion, but is instead arguing the merits of his offer of proof. We will not consider the offer for such purposes.

The defendant also contends that the jury conducted improper experiments during deliberations which enabled them to consider evidence not presented at trial and therefore violated his right to a fair trial. During the trial, upon motion of the State and without objection by the defense, the jury was taken to the scene of the crime and permitted to view the inside of the house in which the victim's body had been found. Record at 2914. Later, after its deliberations had begun, the jury requested permission to revisit the scene of the fire and to review both the inside and the outside of the house. There were no objections from the State nor the defense, and the trial court granted the jury's request, with some restrictions. The jurors had requested permission to fill an empty gas can with water to determine how fast the gas can could be emptied. The trial judge rejected this request, stating, "I cannot allow you to take a gas can and conduct your own experiments. That is not evidence. You cannot conduct your own experiments and make up your own evidence...." Supp. Record at 245. The trial judge granted permission for the jurors to talk to each other about what they were viewing while inside the house, but would not permit such discussion outside the house or in the presence of the bailiff.

Following the trial, three jurors signed affidavits for the defense which stated:

I recall that the jury conducted experiments by walking through the motions of pouring gasoline out of a can[2] inside the home and timing the amount of time this took as well as the amount of time for an individual to crawl from the front door to the bedroom and back to the front door.

Supp. Record at 242; 243; 282. Two different jurors signed affidavits for the State

stating that, during their second visit to the crime scene, "the jury followed Judge Young's order by not conducting any experiments, testing, or timing simulations that were not in evidence." Supp. Record at 401; 564.

In *Kennedy v. State*, 578 N.E.2d 633 (Ind. 1991), *cert. denied*, 503 U.S. 921, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992), during deliberations two jurors of height and build similar to the defendant tried on clothing introduced in evidence. We held that their actions constituted a permissible examination of the evidence and not an improper extrajudicial experiment. We noted the analysis of the Sixth Circuit in *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) that "an experiment by the jury is improper where it amounts to additional evidence supplementary to that introduced during the trial." *Kennedy*, 578 N.E.2d at 641. The State argues that no outside influence was brought into the jury deliberations and that the jurors were merely examining the crime scene, thus making use of matters submitted to them during the trial for their consideration.

At trial, before the jury view of the crime scene, the State introduced evidence relating to whether the defendant had enough time to start the fire. Specifically, Detective Minnis testified that he conducted experiments timing exactly how long it took him to pull into the victim's driveway, walk to the victim's front door (twelve seconds), crawl to the bedroom and back (twelve seconds), walk to the bedroom, pour gasoline in the room making two or three passes around the bed, walk out of the bedroom, light a match and throw it in, and then walk back to the front door (thirty-five seconds). We find that the jury's authorized visit and deliberations at the premises where the crime occurred was not improper.

The final argument presented by the defendant is that the trial court erred by permitting the jury to separate overnight after beginning deliberations. The Indiana Code requires the jury to be kept together

---

2. The jurors did not actually have a gasoline can, but utilized an imaginary can to do their timing.

once deliberations begin. IND.CODE § 35–37–2–6(a)(1) (1993). This Court has taken this requirement very seriously. In *Follrad v. State*, 428 N.E.2d 1201 (Ind.1981), this Court noted that this requirement "serves the obvious and vital purpose of insuring that each juror's individual assessment and verdict are not influenced by matters extraneous to that information presented at trial." *Id.* at 1202. If the jury is allowed to separate, the State must show that exigent circumstances exist warranting a violation of this rule, *id.*, prove beyond a reasonable doubt that the deliberation of the jurors was not affected by the separation, and show that the verdict clearly appears to be supported by the evidence. *Walker v. State*, 274 Ind. 224, 228, 410 N.E.2d 1190, 1193 (1980).

■■■ However, as this Court recently noted in *Pruitt v. State*, 622 N.E.2d 469 (Ind. 1993), where "the court clearly announces to counsel that it intends to permit the jury to go to their homes for the evening and defense counsel poses no objection, appellant is not in a position to raise the issue for the first time on appeal." *Id.* at 472. While there is very little in the trial proceedings dealing with the jury separation, the trial judge did go on record just prior to the jury returning their verdicts and stated, "The jurors were then separated and allowed to go home and then come back the next day for deliberations, which is today, the 18th. There was no objection to that procedure from the attorneys or the parties." Record at 4085. Following this statement, the trial judge asked both the State and the defendant if this was their understanding of the record. The State replied, "Yes, all those things you mentioned were by agreement of both parties." Record at 4086. The defense replied, "That is correct, Your Honor." Record at 4086.

At the remand hearing, the defendant acknowledged that defense counsel had made no objections to the jury's separation. When the trial judge learned that the defendant was attempting to have the record show that he "expressed his displeasure with this procedure at some point into the deliberations process," Supp. Record at 514, the trial judge quickly interjected stating:

[Trial Judge] There was no displeasure on anybody's—as a matter of fact, everybody thought it would be the benefit of their respective clients that the jurors go home. The jurors were exhausted. Both parties were concerned that the jurors might return a verdict just for the mere purpose of returning a verdict.... That's why there was no objection. If there was supposed to be an objection, or if you wanted to lodge an objection, you're both attorneys, you both know the rules of law, an objection could be lodged at that time and we'd make a proper record at that time ... That was not done. Why was that not done? Because no one wanted to do it because everyone agreed with the procedure. I did not hear any displeasure about anything, or anybody having any concern with the Court's order. Everyone thought it was in the benefit of their clients. Is that not correct?

...

[Defense Counsel] I have to agree with that your Honor.

Supp. Record at 517.

*Pruitt* is clear in its pronouncement that defense counsel cannot raise on appeal the propriety of the jury separation if he did not object to the separation at the time it occurred. With the exception of *Pruitt*,[3] every case cited by the defendant involved an objection to the separation lodged by the defendant at trial. In the case at bar, not only did defense counsel not raise any objection, but counsel also agreed to the separation and felt it was beneficial to the defendant at the time. Accordingly, we decline to find reversible error.

We affirm the judgment of the trial court.

SHEPARD, C.J., and SELBY and BOEHM, JJ., concur.

---

3. The defendant's reference to the post-trial hearing in *Pruitt*, in which the State presented evidence that the separation in fact did not affect the deliberations adversely, is not controlling. The defendant in *Pruitt* alleged it was fundamental error to have allowed the separation and this Court was explaining why the separation did not rise to that level. *Pruitt*, 622 N.E.2d at 472. Nowhere in the trial court record, the petition for remand, the supplemental record, or the defendant's brief has he alleged the separation was fundamental error.

SULLIVAN, J., concurs except with respect to the second issue discussed in part 5, in which he concurs in result.