## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 15 2018, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Lyndon C. Davis
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lyndon C. Davis,<br>*Appellant-Petitioner*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | October 15, 2018<br><br>Court of Appeals Case No.<br>45A03-1708-PC-1912<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Clarence D. Murray, Judge<br><br>The Honorable Kathleen A. Sullivan, Magistrate<br><br>Trial Court Cause No.<br>45G02-1406-PC-4 |

**Brown, Judge.**

[1] Lyndon C. Davis appeals the denial of his petition for post-conviction relief. We affirm.

## Facts and Procedural History

[2] The relevant facts as discussed in Davis's direct appeal follow:

> Davis was involved with Terrell Wells and Philip Blake in a drug-dealing operation. Wells was the leader, with Blake under him, followed by Davis. On the side, Blake also worked with Parrish Myles.
>
> Following a disagreement over the whereabouts of some drugs and/or drug money, Wells put a bounty on Myles. Davis met Wells at a park where they discussed the bounty. Davis, who resides in Chicago, then accompanied Wells and some other men to Griffith, Indiana where Myles lived. Wells took Davis to an apartment complex and showed him where Myles resided, all the while stressing that Myles needed to die.
>
> Davis' uncle, Robert Davis ("Robert"), did not know Myles, but Davis informed him of the bounty. Davis then rode with Robert to show him where Myles lived. Once there, Davis pointed out Myles' vehicle, and Robert parked nearby. Robert then retrieved a t-shirt and hat from the trunk of his car, and the two men sat in the car for several minutes. Myles emerged from his apartment with his two children and spoke to Davis and Robert before he began walking to his vehicle. At that point, Robert exited the car and shot Myles.
>
> Davis then moved to the driver's seat, Robert jumped into the passenger seat, and they drove away. Once in the car, Robert changed his shirt and hat, presumably to change his appearance during the getaway. A police pursuit ensued, and Davis exited the car, taking Robert's discarded shirt and hat with him. Davis called Wells for a ride and was apprehended when Wells came to pick him up.

Myles died from the gunshot wounds.

*Davis v. State*, No. 45A04-1304-CR-207, slip op. at 2-3 (Ind. Ct. App. March 5, 2014). The State charged Davis with murder. *Id.* at 3.

[3] At trial, the State presented the testimony of multiple individuals including Aniya Lawson who testified that her father, Parrish Myles, was shot by a man that jumped back into a car, that the person that was in the passenger's seat moved over to the driver's seat, and that they left. She testified that she was not really able to see anything about the person in the car. On cross-examination, Lawson testified that the man who did the shooting was not Davis and that the other person who was in the car did not exit the car. Krystle Gavin testified that she was a witness at the scene. On cross-examination, when asked if the occupants of the car were already in the car by the time you looked over," Gavin answered: "The one in the maroon shirt was getting in the car." Trial Transcript Volume II at 99. When asked if she knew whether Davis was the person she saw with the maroon shirt, she answered: "No, I don't." *Id.* The court also admitted a recorded interview of Davis which was over two hours in length and a subsequent interview of Davis which was over an hour in length.

[4] The trial court instructed the jury on accomplice liability. After the final instructions were given and the jury was removed from the courtroom to deliberate, the court stated: "Counsel, the jury has indicated that it is willing to continue with deliberations, but they are tired, as I'm sure we all are." Trial Transcript Volume IV at 530. The court indicated that it was going to adjourn

for the night and bring them back in the morning and asked counsel if they were "okay with that?" *Id.* The prosecutor indicated that the jury had "been out for roughly slightly over nine hours" and agreed. *Id.* at 531. The court stated: "I think given the circumstances with the weather and the fact that they've been at this for quite a while, that it would be prudent to have them take a fresh approach in the morning." *Id.* Davis's counsel stated: "Judge, I agree with you. May I just ask if they communicated anything specifically to the Court about wanting to go home or was there a note or just your decision?" *Id.* The court responded that the jury indicated they were not close to reaching a verdict and that they wanted to start again in the morning, and Davis's counsel replied: "Sounds good." *Id.* The jury returned to the courtroom, and the court indicated that it was going to adjourn for the evening and return the following morning. The court instructed the jury not to: discuss the case with anyone else; talk to attorneys, parties or witnesses; express any opinion to anyone else about the case; or listen to or read any outside or media accounts of the trial. The following day, the jury found Davis guilty.

[5] On direct appeal, Davis argued the evidence was insufficient to prove that he aided, induced, or caused the commission of murder. *Davis*, slip op. at 3. This Court affirmed. *Id.* at 6.

[6] On June 9, 2014, Davis filed a *pro se* petition for post-conviction relief. In July 2014, a public defender filed an appearance, Davis indicated he elected to proceed *pro se*, and the public defender filed a motion to withdraw. On September 3, 2014, Davis, *pro se*, filed an amended petition.

On December 12, 2014, the court held a hearing. Attorney Benjamen Murphy, Davis's appellate counsel, and Attorney Kevin Milner, Davis's trial counsel and appellate co-counsel, testified. On September 19, 2016, the court denied Davis's petition. Discussion

Before addressing Davis's allegations of error, we observe that Davis is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[9] Davis argues that his trial counsel and appellate counsel were ineffective on multiple bases. Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[10] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668

N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002)). We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001).

A. *Probable Cause Affidavit*

Davis appears to argue that his trial counsel "could have used the deposition of Krystle Gavin to show evidence that the probable cause affidavit contained some false information that was very critical to the finding of probable cause." Appellant's Brief at 21. He asserts that the "probable cause affidavit/search warrant must be voided, and the fruits of the probable cause affidavit/search warrant excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 28.

[12]     Davis does not point out any specific inconsistencies between the probable cause affidavit and Gavin's statements.[1] He does not assert that the probable cause affidavit was admitted at trial or develop a cogent argument regarding how he was prejudiced. We cannot say that reversal is warranted on this basis.

B. *Pre-Trial Investigation and Examination of Witnesses*

[13]     Davis argues that his trial counsel failed to investigate his case and depose or interview any of the State's witnesses before trial. He asserts that Lawson and Gavin were the State's key witnesses and that the depositions that his trial counsel received from the State contain "a very much inconsistent story to what each witness had testified at the trial." Appellant's Brief at 30. He argues that his trial counsel failed to attack Lawson and Gavin's inconsistent statements at trial.

[14]     It is undisputed that effective representation requires adequate pretrial investigation and preparation. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. However, it is well-settled that we should resist judging an attorney's performance with the benefit of hindsight. *Id.* "When deciding a claim of ineffective assistance of counsel for failure to investigate, we

---

[1] Davis cites to "deposition of Krystle Gavin, P.C. App. p. 66" to support his assertion that "Krystle Gavin stated that she had never talked to the detectives and that the statement wasn't true that they say she had made." The page that Davis appears to cite comes from his proposed findings of facts and conclusions of law. *See* Appellant's Appendix Volume II at 66.

apply a great deal of deference to counsel's judgments." *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002), *reh'g denied*.

[15] When asked by Davis about the tactics he uses to build a defense before a trial, Davis's trial counsel testified that he gathers all the discovery, performs his own independent investigation, and deposes witnesses that are going to testify for the State. He also stated: "I will certainly discuss the evidence with you to get your input." Post-Conviction Transcript Volume 2 at 50. When asked if he interviewed or deposed any witnesses prior to the case, Davis's trial counsel answered: "I'm certain I did. I have no recollection, but I'd be shocked if I didn't depose all the substantive witnesses. I honestly don't remember." *Id.*

[16] With respect to the testimony of Gavin and Lawson, we observe that Davis's trial counsel stated:

> My recollection is both she and the other witness, as you said a few minutes ago, testified to what they said they saw, and they both said they didn't see you commit any crime. Why would I want to discredit either one of those witnesses? Those are your best witnesses? They came out there, said they saw what happened, and that you didn't do anything wrong that they saw. I don't want to discredit them. To the contrary, I want the jury to think that they're the most truthful people in the trial.

*Id.* at 62.

[17] He also stated his decisions during trial were based on trial strategy and:

> Those women, as I've said to you a couple of times, I'm certain I could have impeached them if one of them said this happened at

3:00 o'clock, when, in fact, on another time she said it was 3:30. Or if she said you were wearing blue pants, when, in fact, they were black. Those are not substantial inconsistencies. And even if they were, again, I am not going to attack the only witnesses who help you.

*Id.* at 71-72. Under the circumstances, we cannot say that reversal is warranted.[2]

C. *Davis's Statement to Police*

[18] Davis argues that his trial counsel failed to suppress his voluntary statement to detectives under Evidence Rules 403 and 404.[3] He acknowledges that his

_____

[2] To the extent Davis asks this Court to "weigh the witness's credibility under the incredible dubiosity rule," Appellant's Brief at 35, we conclude that his claim amounts to a freestanding claim of error, which is not available in post-conviction proceedings. *See Martin v. State*, 760 N.E.2d 597, 599 (Ind. 2002) ("Freestanding claims that the original trial court committed error are available only on direct appeal."); *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), *reh'g denied*, *cert. denied*, 534 U.S. 1136, 122 S. Ct. 1082 (2002).

[3] At the time of trial, Ind. Evidence Rule 403 provided: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence." (Subsequently amended eff. January 1, 2014). Ind. Evidence Rule 404 provided in part:

    (a) **Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

        (1)   *Character of the accused*. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

                * * * * *

    (b) **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if

statements that he did not plan to commit a crime with Robert, that he was not near the shooting to see what happened, and that he had no knowledge of the shooting before he left the scene of the crime were "not at all incriminating toward himself or Robert." Appellant's Brief at 36. He asserts that his statement cast a shadow over his character because it referenced his criminal lifestyle of selling drugs and associating with drug dealers and Robert's history of being incarcerated for a prior murder.

[19] Davis does not point to any specific portion of his recorded statements to support his assertion that his recorded statement cast a shadow over his character nor does he point to the record to show that he asked his trial counsel why he did not object to or move to suppress his statement. We cannot say that Davis has demonstrated ineffective assistance.

### D. *Jury Instruction*

[20] Davis argues that his trial counsel failed to object to the State's tendered jury instructions on accomplice liability and cites *Kane v. State*, 976 N.E.2d 1228 (Ind. 2012).

[21] We initially note that Davis's trial counsel testified:

---

the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

(Subsequently amended eff. January 1, 2014).

> I felt the instructions, as a whole, meaning the entire packet of instructions that Judge Murray would be reading to the jury, I felt was an accurate statement of the law. I can't remember which particular instruction say which particular things, but I do believe my recollection was thinking that it was a fair statement of the law, the entire group of instructions.

Post-Conviction Transcript Volume 2 at 98. He stated that he did not think there was an error in the accessory liability instruction.

[22] In *Kane*, the Indiana Supreme Court held that the trial court erred by giving an instruction on accomplice liability which did not include a mental state at all and seemed to impose strict liability on the defendant for the unlawful acts of another. 976 N.E.2d at 1232. Here, the instruction specifically stated in part: "To aid under the law is to *knowingly* aid, support, help or assist in the commission of a crime." Trial Transcript Volume IV at 512 (emphasis added). Thus, *Kane* is distinguishable. To the extent Davis questions how he could have participated in the act of murder and suggests the evidence was insufficient, we note that this raises a freestanding claim, which is not available in post-conviction proceedings. *See Martin*, 760 N.E.2d at 599. Reversal is not warranted on this basis.

E. *Jury Separation*

[23] Davis argues that his trial counsel failed to object to the separation of the jury for a lengthy period of time during the process of the deliberation.

[24] Generally, "[t]he Indiana Code requires the jury to be kept together once deliberations begin." *Bradford v. State*, 675 N.E.2d 296, 304-305 (Ind. 1996) (citing Ind. Code § 35-37-2-6(a)(1)), *reh'g denied*. Ind. Jury Rule 29 provides that the "court shall not permit the jury to separate during deliberation in criminal cases unless all parties consent to the separation" and certain instructions are given.

[25] At the post-conviction hearing, trial counsel testified that he was "very comfortable with letting the jury go home, get some rest, and come back and hopefully rule my way." Post-Conviction Transcript Volume 2 at 73. He indicated that the trial court allowed the jury to separate because the jurors were tired. He explained:

> I believe the word tired is a good basis to allow these people to go home. I don't remember, but often juries have elderly people, you often have people with health issues, you often have people with small children at home. I'm not going to punish this jury any more than they're being punished by having to take time out of their lives to deliberate, unless I think it's going hurt [sic] you. If I think it's going to hurt you even one percent, I will make such an argument to the Court.
>
> I saw nothing in this trial to concern me whatsoever about the jury's behavior. I didn't, for one minute, believe that if they were allowed to go home, that it would somehow compromise the verdict. The Judge instructed them, I'm certain, each day to ignore newspaper reports, and not discuss the case with anybody, et cetera, et cetera. So in the absence of any reason to think that this jury was going to be messed with, correct, I would not have complained about them going home. And I'm certain I didn't.

Post-Conviction Transcript Volume 2 at 73-74. Trial counsel also testified that all of his decisions were based on trial strategy. We cannot say that reversal is warranted on this basis.

F. *Appellate Counsel*

Davis appears to argue that his appellate counsel was ineffective for failing to raise the issues that he raised in his petition including that his trial counsel was ineffective. The Indiana Supreme Court has held that appellate counsel's failure to raise a claim of ineffective assistance of trial counsel is not deficient representation because the claim may be presented in post-conviction proceedings and appellate counsel is not required to raise this claim on direct appeal. *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind. 1999), *reh'g denied*, *cert. denied*, 531 U.S. 829, 121 S. Ct. 81 (2000). We also note that Davis's trial counsel served as co-counsel for his direct appeal and arguing one's own ineffectiveness is not permissible under the Rules of Professional Conduct. *See Caruthers v. State*, 926 N.E.2d 1016, 1023 (Ind. 2010). Further, in light of the discussion above, we cannot say that Davis has demonstrated that his appellate counsel was deficient or that he was prejudiced.

## Conclusion

For the foregoing reasons, we affirm the post-conviction court's denial of Davis's petition for post-conviction relief.

Affirmed.

Bailey, J., and Crone, J., concur.